**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **WEDGEWOOD LIMITED** | : | |
| **PARTNERSHIP I,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. C2-04-1069** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **TOWNSHIP OF LIBERTY, OHIO**, *et. al.*, | : | **Magistrate Judge King** |
| | : | |
| **Defendants.** | : | |
| | : | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter comes before the Court on the following motions: (1) Motion to Dismiss for Lack of Jurisdiction and/or Motion for Partial Judgment on the Pleadings by Defendants Holly C. Foust, Robert E. Cape, Kim Cellar, and John C. Werner (collectively, "Trustees"), the Township of Liberty, Ohio, located in Delaware County, Ohio ("Liberty Township"), and the Board of Trustees of Liberty Township ("Board of Trustees") (collectively, "Defendants"); and (2) Motion to Dismiss for Lack of Jurisdiction and/or for Failure to State a Claim on Which Relief Can be Granted by Intervenor Liberty Township/Powell Neighborhood Community Watch Foundation ("Intervenor").  For the reasons set forth herein, Defendants' and Intervenor's Motions are **GRANTED** in part and **DENIED** in part.

### II. STATEMENT OF FACTS[1]

---

[1]Plaintiff asserts that the Defendants and Intervenor have "submitted to this Court what [are] essentially [motions] for summary judgment with hundreds of pages of attached exhibits. . . ." *See* Pls.' Response to Intervenor's Motion to Dismiss at 14.  Plaintiff claims that because the

### A. Background

The parties' dispute centers on the Defendants' decision to deny zoning approval for

Plaintiff's proposed plan to develop a Wal-Mart Supercenter within Liberty Township.

Defendants assert that they refused to issue Plaintiff a zoning permit to build the proposed Wal-

Mart because the store would not comply with Liberty Township's Zoning Resolution.  Plaintiff

claims, however, that Defendants' decision to deny the requested zoning permit was arbitrary

and capricious and violated its constitutional rights.

### 1. The Parties

Plaintiff, Wedgewood Limited Partnership I ("Wedgewood LP" or "Plaintiff"), owns an

approximately 34-acre lot located in the "Wedgewood Commerce Center" development (the

---

attached exhibits include "matters outside the pleadings," the Court should treat the Motions at issue as motions for summary judgment.  *See id.* at 14-16 (citing *Gilbert v. Joyce*, 129 F.3d 1263 (6th Cir. 1997) ("motion to dismiss is more properly construed as a motion for summary judgment because the district court considered matters outside the pleadings")).  Defendants and Intervenor have attached identical Exhibits to their respective Motions.  The Exhibits follow: (1) Exhibit A - Application for Zoning Permit Filed June 29, 2004 by Wedgewood LP; (2) Exhibit B - September 30, 2004 Decision Denying Application for Appeal filed by Wedgewood LP; (3) Exhibit C - October 20, 2004 Application for Appeal filed by Wedgewood LP; (4) Exhibit D – Liberty Township Zoning Resolution – Effective October 3, 2002; (5) Exhibit E – Liberty Township Zoning Resolution – Effective May 1, 1991; (6) Exhibit F - WCC Development Standards with Table of Contents; (7) Exhibit G – October 2, 1991 Liberty Township Trustee minutes; (8) Exhibit H – October 21, 1991 Liberty Township Trustee minutes; (9) Exhibit I - November 11, 1991 – Liberty Township Trustee minutes; (10) Exhibit J – November 18, 1991 - Liberty Township Trustee minutes; (11) Exhibit K – January 19 Instructions; (12) Exhibit L – Liberty Township Zoning Resolution, Article XIV – Effective December 8, 2004.  Each of the aforementioned Exhibits constitutes a public record.  Accordingly, the Court may take judicial notice of these documents without converting the Motions into motions for summary judgment. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ("'[A]s a general rule, matters outside the pleadings may not be considered in ruling on a [Rule] 12(b)(6) motion to dismiss unless it is converted into one for summary judgment under [Rule 56].'  There are, however, exceptions to this general rule.  Courts may consider public records, matters of which a court may take judicial notice, and letter decisions of government agencies.").

"WCC"), a 345-acre mixed-use development within Liberty Township.  The lot, which is the

subject of the instant suit, was platted as "lot number 2069" or "subarea 3" in the WCC Section 1

in 1994 and recorded as such in the Delaware County records.  *See* Ex. F.  In addition to owning

lot number 2069, Wedgewood LP was also one of the original developers of the WCC.

Defendants are Liberty Township, the Board of Trustees, and the individual board members in

their capacity as Trustees.[2]  Also, the Liberty Township/Powell Neighborhood Community

Watch Foundation ("Intervenor") has intervened as a party defendant in the suit.

## 2. The WCC Development

In June 1991, Plaintiff and others filed an application for a Zoning Map amendment from

FR-1 to Planned Commercial ("PC") to create the WCC, a proposed planned-unit development.[3]

---

[2]Though the Sixth Circuit does not require plaintiffs bringing section 1983 zoning claims to do so, Plaintiff named each individual member of the Board of Trustees in his official capacity as a Defendant. *But see, Leach v. Shelby County Sheriff*, 891 F.2d 1241 (6th Cir. 1989) (the Sixth Circuit does not require plaintiffs bringing Section 1983 zoning claim to name individual board members or trustees in their official capacities as defendants).

[3]Section 519.021 of the Ohio Revised Code applies to the adoption of PUD regulations by Ohio townships, providing, in relevant part:

. . . Planned-unit developments may be included in the township zoning resolution under one of the following procedures.

(A) The board of township trustees may adopt planned-unit development regulations that do not automatically apply to any property in the township, but establish standards that will apply to property that becomes part of the planned-unit development as provided in this division.  Property owners who wish to have planned-unit development regulations apply to their property may apply to have the zoning map amended pursuant to section 519.12 of the Ohio Revised Code to rezone their property as a planned-unit development, and no longer subject to the previously applicable zoning regulations.  Once property has been rezoned as a planned-unit development, subsequent development on that property shall comply with the planned-unit development regulations as determined by the board of township trustees or township zoning commission, as applicable.  After the designation of the property as a planned-unit development on the zoning, any approval or

-3-

disapproval of subsequent use or development of property in a planned-unit development as being in compliance with regulations established as authorized by this division shall not be considered to be an amendment or supplement to a township zoning resolution for the purpose of section 519.12 of the Revised Code, but may be appealed pursuant to Chapter 2506 of the Revised Code.

(B) Upon the application of property owners, the board of township trustees may establish a planned-unit development for their property, designating the property as a planned-unit development on the zoning map in accordance with the procedures set forth in section 519.12 of the Revised Code, and simultaneously adopting regulations as part of that same procedure that will apply on ly to that planned-unit development.  Within that development, property is subject to the planned-unit development regulations and not to any other zoning regulations.  Compliance with the planned-unit development regulations shall be determined by the board of township trustees or township zoning commission, as applicable.  After the designation of the property as a planned-unit development on the zoning map and the simultaneous adoption of regulations that will apply only to that planned-unit development, any approval or disapproval of subsequent use or development of property in a planned-unit development as being in compliance with regulations established as authorized by this division shall not be considered to be an amendment or supplement to a township zoning resolution for the purposes of section 519.12 of the Revised Code, but may be appealed pursuant to Chapter 2506 of the Revised Code.

(C) Pursuant to section 519.12 of the Revised Code, the board of township trustees may adopt planned-unit development regulations and amend the zoning map to rezone property as planned-unit developments.  Any other zoning regulations and zoning district that exist at the time a planned-unit development district is established under this division continue to apply within the planned-unit development district unless the board or the township zoning commission approves an application of an owner of property within the district to subject the owner's property to planned-unit development regulations under this division.  Such an application shall be made in accordance with the planned-unit development regulations and shall include a development plan that complies with the planned-unit development regulations.  Upon receiving such an application, the board of township trustees or township zoning commission . . . shall determine whether the application and plan comply with the planned-unit development regulations.  The board's or commission's determination shall not be considered to be an amendment to a township zoning resolution for purposes of section 519.12 of the Revised Code, but may be appealed pursuant to Chapter 2506 of the Revised Code. If the board or commission makes a final determination that the plan included in the application complies with the planned-unit development regulations or if the board's or commission's final determination is one of noncompliance then if a court of competent jurisdiction makes a final nonappealable order finding compliance, the board or commission, as applicable,

-4-

On November 18, 1991, the Board of Trustees approved the re-zoning and the parties developed

a planned-unit development plan (the "PUD Plan").[4, 5]  The PUD Plan, and all corresponding plat

maps were formally combined into the "Wedgewood Commerce Center Development

Standards" ("WCC Development Standards"), which was filed with the Commission on

February 2, 1992.  *See* Ex. F.  Among other things, the WCC Development Standards required

the establishment of an "architectural review committee" to "exercise control over the design

and final planning of all phases of the development" and to ensure that the proposed structures fit

---

shall approve the application and upon approval shall cause the zoning map to be changed so that any other zoning district that applied to the property that is the subject of the owner's application no longer applies to that property.  The removal of the prior zoning district from the zoning map is a ministerial act and shall not be considered to be an amendment or supplement to a township zoning resolution for the purposes of section 519.12 of the Revised Code and may not be appealed pursuant to Chapter 2506 of the Revised Code. . .

As used in this section, "planned-unit development" means a development which is planned to integrate residential, commercial, industrial or any other use. . . .

*See* OHIO REV. CODE § 519.021.

[4]Both the Delaware County Regional Planning Commission and the Liberty Township Zoning Commission (the "Commission") rejected developers' initial proposals regarding a WCC planned-unit development.  After extensive negotiations between the developers and various Trustees, however, the Board of Trustees approved a revised version of the initial proposals – the PUD Plan.  The parties dispute the details of the negotiations as well as various elements of the PUD Plan.

[5]In *Gray v. Trustees of Monclova Twp.*, 313 N.E.2d 366 (Ohio 1974), the Ohio Supreme Court addressed the nature of planned-unit development ("PUD") zoning, explaining that PUD zoning permits those aspects of land development that were normally regulated by zoning to vary within a geographically-defined area by bearing a single zoning classification.  The *Gray* court noted that, "[t]he overall zoning classification in a PUD area can be termed 'nominal' because it does not, by itself, indicate the specific zoning restrictions in the area. These restrictions are ascertainable only by referring to the approved plats for the development."  *Id.* at 369.  Accordingly, the *Gray* court found that the approval of a PUD plat is the functional equivalent of "traditional legislative zoning."  *Id.*

-5-

the "rural context of Liberty Township."  *See* Ex. F ¶ 3.  Further, the WCC Development

Standards provided that development would occur in five-year phases and would "proceed as

market conditions dictate," estimating that it would take approximately ten to twelve years to

finish the project.  *Id*. ¶¶ 7-8.

Pursuant to the PUD Plan, lot number 2069 was zoned "Planned Commercial"[6] ("PC").

According to the Liberty Township Zoning Resolution in place at that time, in a Liberty

Township PC zone, the developer gets to "craft its own unique zoning that applies only to that

developer's parcel."  *See* Zoning Resolution §§ 14.01, 14.06(a)-(c) (eff. May 1, 1991).[7]  To allow

for this "unique zoning," each developer's PC plan becomes part of an amendment to the

Township's zoning code.  *See id*. §§ 14.06(d) ("The Development Plan as approved by the

Township Trustees shall *constitute an amendment to the zoning resolution as it applies to the*

*lands included in the approved amendment*.") (emphasis added).

Over the course of the next thirteen years, in accordance with standard Liberty Township

---

[6]"Planned Commercial" zones are also referred to as "Planned Commercial and Office" zones.  *See* Intrevenor's Motion at 8 (citing Foust Aff, at Tab G, "Oct. 2, 1991 Meeting Minutes").

[7]Section 14.01, "Planned Commercial and Office District – Purpose," provides:

The Township, recognizing that with increased urbanization and population growth comes increased demands for well organized commercial areas to provide employment, goods and services to area residents as well as to provide a balanced economy within the township, hereby provides for the Planned Commercial and Office District, intending hereby to promote the variety and flexibility of land development for commercial purposes that are necessary to meet these demands while still preserving and enhancing the health, safety and general welfare of the inhabitants of the Township.

*See* Liberty Township Zoning Resolution § 14.01.

zoning procedure,[8] significant development occurred within the WCC. Some of this development differed from what was set forth in the PUD Plan. For instance, although the PUD Plan designated subareas 4, 5, 6, and 10 for "suburban office use" only, owners of each of these subareas sought approval for and were granted permits to build retail and/or commercial structures. Accordingly, subareas 4, 5, 6, and 10 now comprise approximately 248,000 square feet of "commercial" development, rather than the suburban office space for which they were initially zoned. Plaintiff asserts that it had no involvement or input in Liberty Township's approval of these zoning changes.

In October 2003, Plaintiff submitted an application to the Commission for six area variances, primarily from set-backs, to construct a Wal-Mart Supercenter on WCC lot number 2069. The parties do not dispute that the proposed Wal-Mart store complies with the definition of "commercial" use under the Liberty Township Zoning Resolution.[9] After conducting a public hearing on the matter, however, the Commission denied Plaintiff's variance applications, and Plaintiff subsequently withdrew them.

Soon after Plaintiff's variance applications were denied, the Homeowners Associations of Wedgewood, Campden Lakes, Wedgewood Hills, Falcon Ridge, Braemar, the Barringtons at

---

[8]Parties seeking to construct buildings on property within Liberty Township must first apply for a "Zoning Certificate" from the Zoning Inspector, who must then certify that the proposed construction is consistent with Liberty Township's Zoning Resolution.

[9]"Commercial use" includes "commercial and office establishments of all types developed and maintained within an organized development of associated commercial activities in accordance with the approved development plan." *See* Liberty Township Zoning Resolution § 14.03(a).

Wedgewood Villa Condominium Association, Big Bear Farms, and Grandshire,[10] detailed their

concerns over what they deemed inconsistencies in the PUD Plan.  The Board of Trustees then

ordered the Zoning Inspector, Holly Foust, to "study" the history of the administration of the

PUD Plan to alleviate a number of concerns over its application.

On January 19, 2004, following the Zoning Inspector's study, the Trustees issued a

Public Statement (the "January 19 Instructions"), which now governs the procedural

administration of the WCC by the Commission.  Importantly, the January 19 Instructions

concluded that the PUD Plan imposed a so-called "floating cap" of 500,000 square feet of

commercial property (the "floating cap") on all development within the WCC.[11]  Accordingly,

---

[10]These groups later formed the Liberty Township/Powell Neighborhood Community
Watch Foundation.

[11]The January 19 Instructions provide:

Extensive review and analysis of the [WCC] development plan, the minutes of the
meetings which led to the approval of that plan, the policies that have been followed
to date in administering that plan, and the discernable intent of all the parties expressed
during the conception and the process which led to the approval of the plan, has led us to
conclude that the ultimately adopted plan imposed a "floating" maximum of 500,000 sq.
ft. of "commercial" development in the [WCC].  We have found evidence of the
establishment of this limit in a number of different documents.  Moreover, we have found
no documents or proof through amendment processes which modified this "overall"
square footage cap, as best we can conclude.  The subject of whether or not an acreage
"cap" also applies has been more difficult.  On the one hand, the documents clearly show
that such a cap was contemplated and negotiated., and is reflected in several different
drawings, text, and supporting documents.  Unfortunately, however, the documents that
exist are at least arguably inconsistent with respect to the starting point of the cap and
acreage basis.  Moreover, amendments and changes requested and, in some cases,
approved over the years, may or may not have had the impact of suggesting or modifying
the acreage cap. . . .
The analysis reveals that the commercial development completed to date, and
substantially through the approval process, has consumed most of the commercial
square footages imposed by the development plan as an overall cap.  The analysis also
reveals that on an acreage basis, commercial development to date has exceeded at least

the Board of Trustees instructed the Zoning Inspector to refrain from issuing any Zoning

Certificates for additional commercial development within the WCC unless or until the PUD

Plan had been modified or amended pursuant to procedures for modifications set forth in the

Liberty Township Zoning Resolution.  The Board of Trustees further indicated that any future

applications for commercial development would be subject to a "two-step major deviation"

development plan modification.[12]

Plaintiff did not submit Zoning Applications under this heightened "major modification"

process.  Instead, on June 29, 2004, Plaintiff, using standard Liberty Township procedure,

applied for zoning permits to build an approximately 220,598 square foot Wal-Mart Supercenter

------

two of the acreage figures evidenced in the documents which constitute the development
plan, as amended.

See Ex. K at 2-3.

[12]The Board of Trustees wrote,

the commercial development completed to date, and substantially through the approval
process, has consumed most of the commercial footages imposed by the development
plan as an overall cap. . . Under these circumstances, we have determined that, except for
a few modest projects which have already completed the two-step "major" administrative
review process, *all additional applicants seeking to construct retail or other arguable
"commercial" development in the [WCC[ will be required to seek approval as a "major"
plan of modification*.  In other words, we are instructing our zoning department to refrain
from issuing zoning certificates for any additional commercial development in the
[WCC], to issue such permits only after an approval through the "two-step" major
process has been completed.  Each process will be considered to be an application to
consume any remaining portion of the square footage limitation, or exceed that
limitation, and as a modification to expand the acreage limitation which we believe has
been met.

See Def. Intervenor's Ex. K to Ex. 1 at 2-3 (emphasis added).  The two-step approval process
includes: (1) a review by the Commission or the Liberty Township Board of Zoning Appeals
("BZA"); and (2) a review by the Board of Trustees.  *See* Zoning Resolution § 14.06(E) (eff.
Oct. 3, 2002).

and a Murphy Oil Gas Station in subarea 3.  On September 30, 2004, the Zoning Inspector

denied Wedgewood LP's permit applications explaining that, in light of the January 19

Instructions, the applications: (1) failed to meet the requirements for development plans; (2)

exceeded the acreage allowed under the floating cap; (3) were incomplete because they had

neither been submitted for approval nor approved by the WCC architectural review committee;

and (4) were inconsistent with both the Zoning Resolution and the PUD Plan.[13,14]

----

[13]Specifically, in denying Plaintiff's zoning permit application, the Zoning inspector wrote,

> a. The Development Plan for [WCC] remains incomplete, because at no time has this office received a revised Development Plan and Plat which in all respects conforms to the representations and commitments made at the meeting of the [Trustees] which occurred on November 18, 1991, and at the hearings which preceded that final hearing.  The applicant, [Wedgewood LP], for the current zoning application, is an entity that is closely related to the entity Wedgewood Limited Partnership I which sought and obtained the rezoning of the land which is now the [WCC], and is also the Appellant, and the principals of these entitles [sic.] are directly responsible for the lack of performance in producing and filing a revised Development Plan which was promised;

> b. The request for approval does not meet either the documented or the promised and agreed upon requirements of the currently effective Development Plan applicable to the [WCC] Planned Commercial Zoning District.  In the context of the amount of commercial development already constructed and allowed in the [WCC], the proposed construction would exceed the maximum allowable commercial acreage and square footage limitations that were expressly made a part of the development plan;

> c. The application is incomplete because it does not include the required approval of the [WCC] Architectural Review Committee;

> d. The application is incomplete, internally inconsistent, and at variance with the requirements of the Liberty Township Resolution and the standards established and applicable under the [WCC] Plan in 9 detailed respects with regard to the Retail building component of the Applications and in 16 ways with respect to the Murphy Oil USA component of the applications.

See Def. Intervenor's Ex. A, Liberty Township Board of Zoning Appeals, Case No. BZA04-28, *Findings of Fact and Conclusions of Law* at 4-5 (Jan. 11, 2005) ("BZA Findings of Fact and

On October 20, 2004, Plaintiff appealed the Zoning Inspector's denial to the Liberty Township BZA. At the same time, Plaintiff also submitted a revised site plan and a letter withdrawing its permit application for the Murphy Oil gas station. In its appeal, Plaintiff stated that the Zoning Inspector had acted improperly in finding its zoning permit applications incomplete. Plaintiff also stated that the Zoning Inspector had acted improperly in finding that the proposed construction would exceed the maximum square footage limitations because the January 19 Instructions, which served as the basis for the Inspector's decision, were inaccurate. Further, Plaintiff asserted that the Zoning Inspector had incorrectly stated that she could not issue a Zoning Certificate without the architectural review committee's approval as such approval had not been required in the thirteen years since the PUD Plan had been approved. Finally, Plaintiff argued that the Zoning Inspector had mistakenly deemed its applications incomplete for allegedly failing to meet variance requests.[15]

_____

Conclusions of Law").

[14]In regards to the Wal-Mart Supercenter, the Zoning Inspector cited nine different reasons that Plaintiff's application was "incomplete" and "internally inconsistent." Ex. B ¶ 4.a.-i. For instance, the Inspector explained that though "Section 25.03 of the Zoning Resolution requires that the site plan show structural dimensions at the ground[, n]o structural dimensions are provided on the site plan which has been submitted." *Id.* ¶ 4.b.

[15]A factual dispute exists between the parties regarding the details of the PUD Plan. Defendants and Intervenor assert that the PUD Plan was to be developed in five-year phases, and they contend that prior to the Board of Trustees' final approval of the PUD Plan, the Trustees held a November 11, 1991 public hearing, where it was decided that the WCC would be limited to the density of one million square feet of office space, 500,000 square feet of retail space, and 750 residential units. Further, Defendants assert that on November 15, 1991, an amendment was made that commercial construction could not exceed 500,000 square feet. As support for their contention, Defendants and Intervenor cite to the minutes from the Commission's October 1991 and November 1991 meetings. *See* Ex.'s G through J. Plaintiff counters that the parties never agreed to set a floating cap on commercial development. Moreover, though Plaintiff concedes that it agreed to the establishment of a WCC architectural review committee, it contends that the committee has never met, and the Commission has never before required the committee's pre-

**B. Procedural History**

Because Plaintiff has filed the instant federal court action in addition to filing a later suit in state court, a discussion of the procedural history of both the federal and state court proceedings is necessary.

**1. State Court Proceedings**

On November 5, 2004, before the BZA had ruled on Plaintiff's appeal, Plaintiff filed the instant suit claiming that Defendants' reliance on the January 19 Instructions, Defendants' modification of the Zoning Resolution, and Defendants' denial of Plaintiff's Wal-Mart zoning permit application violated Plaintiff's constitutional rights.  After Plaintiff filed this action, however, administrative activity regarding Plaintiff's denied zoning permit continued in Liberty Township.

On November 16, 2004, the Liberty Township BZA conducted a public hearing on Plaintiff's appeal of the Zoning Inspector's decision.  Although Plaintiff did not present any testimonial evidence at the hearing, it did present arguments concerning the content and meaning of its plans, the development of the surrounding parcels, and a history of the WCC.  On January 11, 2005,[16] the BZA affirmed Zoning Inspector's September 30 denial of Plaintiff's permit applications.  *See* BZA Findings of Fact and Conclusions of Law.  Thereafter, on February 8, 2005, Wedgewood LP filed its Notice of Appeal from the BZA's "final decision" in state court,

---

approval of a party's zoning permit application.

[16]Though the appeal was initially scheduled for an earlier date, at Wedgewood's request, on December 7, 2004, the appeal was continued until January 11, 2005.

pursuant to Ohio Revised Code § 2506.01.[17]

On March 28, 2005, Plaintiff filed a Motion to Supplement the Record with Additional

Evidence and to Stay the Briefing of the Case Pending a Decision on this Motion.  Plaintiff

contended that the Board of Trustees' directive that they must approve, after public hearing, all

commercial development in WCC was "improper and illegal."  Plaintiff also asserted that the use

of lot 2069 to build an approximately 220,000 square foot Wal-Mart store is not a deviation from

the PUD Plan because in 1991, Plaintiff was originally allotted up to 220,857 square feet for

commercial development.  Further, Plaintiff claimed that it was not bound by the floating cap

because no such cap had been set forth in the WCC Development Standards, and because it had

never agreed to allot a significant percentage of the purported floating cap to the developers of

subareas 4, 5, 6, and 10, who were permitted to construct commercial buildings in place of the

office space set forth in the PUD Plan.  On or about May 13, 2005, the state court denied

---

[17]Under Ohio law,

Every final order, adjudication, or decision of any officer, tribunal, authority, board,
bureau, commission, department, or other division of any political subdivision of the
state may be reviewed by the court of common pleas of the county in which the principal
office of the political subdivision is located as provided in Chapter 2505 of the Revised
Code, except as modified by this chapter.

The appeal provided in this chapter is in addition to any other remedy of appeal provided
by law.

A "final order, adjudication, or decision" means an order, adjudication, or decision that
determines rights, duties, privileges, benefits, or legal relationships of a person, but does
not include any order, adjudication, or decision from which an appeal is granted by rule,
ordinance, or statute to a higher administrative authority if a right to a hearing on such
appeal is provided, or any order, adjudication, or decision that is issued preliminary to or
as a result of a criminal proceeding.

OHIO REV. CODE § 2506.01 (West 2006).

-13-

Plaintiff's Motion to Supplement the Record, explaining that in failing to address its questions and concerns regarding certain documents and procedures during the BZA hearing, Plaintiff had effectively waived its right to supplement the record in the trial court.

On July 18, 2005, the parties participated in a hearing before the Court of Common Pleas for Delaware County, Ohio, addressing only two narrow issues: (1) the legal basis for the floating cap on commercial development in the WCC development; and (2) whether the PUD Plan had expired by the time Plaintiff had submitted its Wal-Mart zoning permit application. The state court noted that there was a dearth of evidence on both of the issues in question, explaining:

> In this case, vital information is missing from the Liberty Township Board of Zoning Appeals ("BZA") record that was submitted to this Court. Scarce, if any, testimony or exhibits were contained within the record that resolved questions pertaining to the basis of the zoning inspector's decision to deny Wedgewood's application for a zoning certificate. Further, the record was also devoid of evidence as to the legal basis of the 500,000 square foot commercial limit imposed upon the WCC; and evidence as to the affect of the originally approved [Development P]lan for the WCC on the commercial limit.

*See Wedgewood Ltd. P'ship I v. Liberty Twp. Bd. of Zoning Appeals*, Case No. 05CV-F-02-101, Decision and Entry at 3 (Ohio Ct. Com. Pl.'s Sept. 22, 2005) (Whitney, J.). Accordingly, the state court remanded the matter to the Liberty Township BZA to "carry out its role as the finder of fact to determine the basis of the zoning inspector's decision, as well as provide documentation for the 500,000 square foot commercial limit [(the floating cap)] on the [WCC] Development and the affect of the original [PUD] Plan." *Id*. The parties have since appealed the state court's ruling and are scheduled to appear for oral argument in the coming months.

### 2. Federal Court Proceedings

Plaintiff's federal court Complaint asserts nine counts against Defendants. Counts one

through four, which Plaintiff brings pursuant to 42 U.S.C. § 1983, state that Defendants violated Plaintiff's procedural due process, substantive due process, and equal protection rights by relying on unconstitutionally vague ordinances to deny its various applications for Zoning Permits arbitrarily, capriciously, and willfully. Particularly, Plaintiff asserts that Defendants' interpretation of the PUD Plan and the WCC Development Standards to include the floating cap on commercial development was arbitrary, capricious, irrational and discriminatory. Counts five through eight assert identical claims pursuant to Ohio law. Count nine requests a declaratory judgment.

Specifically, Plaintiff seeks the following relief: (1) a declaratory judgment that Plaintiff's proposed development is in full compliance with all Liberty Township zoning standards; (2) a declaration that Defendants' actions attempting to establish and enforce the floating cap on commercial development in the WCC are improper, impermissible, and a violation of Plaintiff's due process and equal protection rights; (3) an order enjoining Defendants from enforcing the floating cap on commercial development and the January 19 Instructions against Plaintiff; (4) an order requiring Defendants to issue Plaintiff a Zoning Certificate to develop its proposed Wal-Mart store; (5) an order enjoining Defendants from refusing to issue a Zoning Certificate for Plaintiff's proposed Wal-Mart store; (6) compensatory damages, attorney's fees, costs, and any other declarative, injunctive, or equitable relief the Court deems just and appropriate.

On May 20, 2005, the Court granted Intervenor leave to intervene as a party defendant in the suit. On August 9, 2005, this Court stayed discovery in the case pending resolution of the parties' jurisdictional motions, and denied Intervenor's Motion to Postpone Decisions on

-15-

Defendants' Motion for Judgment on the Pleadings until Briefing is Concluded on the Motion to Dismiss Submitted by Intervenors.  Both Defendants' Motion to Dismiss and/or Motion for Judgment on the Pleadings and  Intervenors' Motion to Dismiss have been fully briefed and are now ripe for this Court's decision.  Because the Court finds that Defendants' Motion contains issues that overlap with those set forth in Intervenor's Motion to Dismiss, the Court will consider the Motions in tandem.

### III. STANDARD OF REVIEW

#### A. Dismissal For Lack of Subject Matter Jurisdiction

Where a defendant raises the issue of lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss.  *DXL, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004); *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  A facial attack is a challenge to the sufficiency of a complaint, and, when considering the motion, the court must view the material allegations of that complaint as true and construe them in the light most favorable to the nonmoving party.  *Id*.  A factual attack is a challenge to the factual existence of subject matter jurisdiction.  *Id.*  No presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and to satisfy itself as to the existence of its power to hear the case.  *Id.*; *Moir*, 895 F.2d at 269.  When there is an attack on the factual basis for jurisdiction, the district court must weigh the evidence, and the plaintiff has the burden

-16-

of proving that the court has jurisdiction over the subject matter. *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005).

## B. Motion for Judgment on the Pleadings

A motion for judgment on the pleadings may be made "[a]fter the pleadings are closed but within such time as not to delay the trial." FED. R. CIV. P. 12(c). Pleadings are considered "closed" once a complaint and answer have been filed. FED. R. CIV. P. 7(a). Where the Rule 12(c) motion is based on the argument that the complaint fails to state a claim upon which relief may be granted, it is judged under the same standard of review as a Rule 12(b)(6) motion. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 11 (6th Cir.1987) (finding "[w]here the Rule 12(b)(6) defense is raised by a Rule 12(c) motion for judgment on the pleadings, we must apply the standard for a Rule 12(b)(6) motion in reviewing the district court's decision").

## C. Dismissal for Failure to State a Claim on Which Relief Can be Granted

A motion to dismiss under Rule 12(b)(6) is designed to test "whether a cognizable claim has been pleaded in the complaint." *Scheid v. Fanny Farmer Candy Shops, Inc.* 859 F.2d 434, 436 (6th Cir. 1988). In considering such a motion, the Court is limited to evaluating whether a plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir. 1983). Dismissal under Rule 12(b)(6) streamlines litigation by "dispensing with needless discovery and fact-finding" on claims that are legally untenable in the first place. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

All factual allegations made by a plaintiff are deemed admitted and ambiguous allegations must be construed in his favor. *Murphy v. Sofamor Danek Gp., Inc.,* 123 F.3d 394,

400 (6th Cir. 1997). A complaint should not be dismissed under Rule 12(b)(6) "'unless it appears beyond doubt that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While the complaint need not specify every detail of a plaintiff's claim, it must give the defendant "'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) (quoting *Conley*, 355 U.S. at 47).

This liberal standard of review does require more than the bare assertion of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Under the federal pleading requirements, a plaintiff's complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* FED. R. CIV. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what plaintiff's claim is, and the grounds upon which it rests." A complaint must contain either direct or inferential allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory. *Id.* (citations omitted).

## IV. ANALYSIS

### A. Subject Matter Jurisdiction

Before proceeding to the merits of Plaintiff's claims, the Court must consider Defendants' and Intervenor's arguments that it cannot exercise subject matter jurisdiction over the matter. First, Defendants and Intervenor argue that the Court lacks subject matter jurisdiction over Plaintiff's constitutional claims because, pursuant to *Williamson County Regional Planning Comm'n. v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985),

-18-

Plaintiff's procedural due process, substantive due process, and equal protection claims are not ripe for review. Second, assuming arguendo that the Court finds Plaintiff's claims ripe, Defendants and Intervenor contend that recent amendments to Liberty Township's Zoning Resolution have mooted Plaintiff's claims. Third, Defendants and Intervenor assert that Plaintiff does not have standing to assert its vagueness claim. Fourth, Intervenor states that, pursuant to *San Remo Hotel, L.P. v. City & County of San Francisco, California*, 125 S.Ct. 2491 (2005), this Court should abstain from issuing a decision on Defendants' and Intervenor's Motions if and/or until the pending state action is resolved. The Court will consider each of the aforementioned arguments in turn.

### 1. Ripeness

The doctrine of ripeness arises from Article III of the United States Constitution, which, *inter alia*, limits the jurisdiction of federal courts to consideration of actual cases and controversies, and precludes federal courts from rendering advisory opinions. *Arnett v. Meyers*, 281 F.3d 552, 562 (6th Cir. 2002) (citing *Adcock v. Firestone Tire and Rubber Co.*, 822 F.2d 623, 627 (6th Cir. 1987)). "Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Id.*

Defendants and Intervenor allege that because Plaintiff did not receive a final decision on its zoning permit applications or exhaust its administrative remedies before filing suit in federal court, pursuant to the rule set forth by the Supreme Court in *Williamson County*, its claims are not ripe for this Court's review. *See* 473 U.S. at 186. Plaintiff retorts that under *Nasierowski Brothers Investment Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991), its procedural

and substantive due process claims are *immediately cognizable* in federal court.  Moreover,

Plaintiff asserts that should the Court find the *Williamson County* requirements applicable to its

due process and equal protection claims, those claims are ripe because the Zoning Inspector's

September 30, 2004 denial of its permit applications amounts to a "final decision."

     In *Williamson County*, plaintiff, the owner of a tract of land, filed suit against the county

planning commission and others in federal court, alleging that the defendants had taken its

property without just compensation in violation of the Fifth and Fourteenth Amendments.  *See*

473 U.S. at 172.  Plaintiff asserted that although the planning commission had granted it

preliminary approval to construct a residential subdivision,  after the plaintiff had spent millions

of dollars on construction, the commission effectively made building the subdivision impossible

by repeatedly changing its mind about the requirements of the pertinent zoning laws and

subdivision regulations.  *Id*.

     The Supreme Court concluded that plaintiff's claim was not ripe for its review.

*Williamson County*, 473 U.S. at 185.  First, the Court found that plaintiff had not obtained a

"final decision" regarding the application of the zoning ordinance and subdivision regulations to

its property.  *Id*.  The Court reasoned that there was no finality because the commission's

objections could have been resolved with variances, which, if granted would have allowed

plaintiff to build as it desired, eliminating the need for the federal courts to address the difficult

constitutional questions associated with regulatory takings.  *See id*. at 186-94.  Second, the

Supreme Court recognized that plaintiff had not yet suffered the injury contemplated by the Fifth

Amendment's takings clause because it had not yet been refused just compensation.  *See*

*Williamson County*, 473 U.S. at 194-95.  ("The Fifth Amendment does not proscribe the taking

of property; it proscribes taking without just compensation. . . Thus, the State's action is not

'complete' in the sense of causing a constitutional injury 'unless or until the State fails to

provide an adequate post[-]deprivation remedy for the property loss.'") (citation omitted).

Because Tennessee had an adequate procedure for pursuing inverse condemnation remedies,

plaintiff was required to utilize that procedure before turning to the federal courts for assistance.

*See id*.

In holding that plaintiff's claim was not ripe, the *Williamson County* court took pains to

distinguish the concept of *finality* from the somewhat related but distinct concept of *exhaustion*

*of state remedies*. *See Williamson County*, 473 U.S. at 192-93.[18]  The reason the Court required

plaintiff to pursue state remedies first was not so that plaintiff could obtain a judgment about

whether the planning commission's actions had violated its rights; that would be an exhaustion

requirement.  *See Montgomery v. Carter County, Tennessee*, 226 F.3d 758, 765 (6th Cir. 2000)

(discussing *Williamson County*, 473 U.S. at 193 ("While it appears that the State provides

procedures by which an aggrieved property owner may seek a declaratory judgment regarding

the validity of zoning and planning actions taken by county authorities, respondent would not be

required to resort to those procedures before bringing its § 1983 action, because those procedures

---

[18]The Supreme Court has held that *exhaustion*, "generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate," and is not required before a plaintiff may bring a suit predicated upon 42 U.S.C. § 1983."  *Id*. (citing *Williamson County*, 473 U.S. at 193).  *Finality*, on the other hand, "is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury. . . ."  *Id*.  The purpose of the final decision requirement is to ensure that the court will know the nature and extent of permitted development before adjudicating the validity of the regulation that purports to limit it.  *See First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304 (1987).

are clearly remedial.") (citation omitted)).  Instead, the Court required plaintiff to seek variances so that the city's planning commission could have a final chance to determine, once and for all, whether and to what extent the pertinent zoning laws and subdivision regulations allowed the plaintiff to build on his property.  *Id*.  If the planning commission decided to grant plaintiff all of the variances it needed to build as it wished, then plaintiff would have the full use of its property after all and would have no justiciable takings claim (except possibly for the interim period during which the tract owner was not allowed to build).  *Id*.

The holding of *Williamson County*, therefore, is that Fifth Amendment *takings* claims do not ripen in zoning cases until: (1) there has been a final decision by the relevant state decision-maker; and (2) the property owner has utilized appropriate state inverse condemnation procedures (or other comparable alternatives).  *See Montgomery*, 226 F.3d at 765.  This latter requirement applies only if a "reasonable, certain and adequate provision for obtaining compensation," exists in that state.  *Williamson County*, 473 U.S. at 192-94.  In this case, Plaintiff has not alleged a Fifth Amendment taking, regulatory or otherwise.  Accordingly, the Court must consider whether the finality and exhaustion requirements of *Williamson County* apply to Plaintiff's procedural due process, substantive due process, and/or equal protection claims.

Whether finality is required in any given case depends on the type of the harm alleged. *Hammond v. Baldwin*, 866 F.2d 172, 176 (6th Cir. 1989).  For instance, "[i]f the injury the [plaintiffs] seek to redress is harm to their property amounting to a 'deprivation' in constitutional terms, a final judgment is required," but if the injury is the infirmity of the process, neither a final judgment nor exhaustion is required."  *See Bowers v. City of Flint*, 325 F.3d 758, 762 (6th

Cir. 2003) (citing *Hammond*, 866 F.2d at 176). In essence, a due process challenge to an allegedly unconstitutional procedure brought under section 1983 is *not* subject to a finality requirement, while a claim alleging harm or deprivation of property "is substantive, and, so, a final judgment (but not exhaustion) is required." *Id.*; *see Nasierowski Brothers Investment Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991) ("a procedural due process claim is instantly cognizable in federal court without requiring a final decision on a proposed development from the responsible municipal agency"); *see also Hammond*, 866 F.2d at 176 (in cases of the present type "'the allegedly infirm process is an injury in itself,' whereas, in the context of a takings claim, the alleged injury . . . cannot be assessed with any degree of certainty until the municipality arrives at a final decision").

Counts one and two of Plaintiff's Complaint, which assert that Defendants violated Plaintiff's due process rights by arbitrarily, capriciously, and willfully ignoring Plaintiff's compliance with Defendants' legitimate zoning standards to deny Plaintiff its requested Zoning Certificates, constitute pure due process claims. *See* Complaint ¶¶ 29-40. Under the rule promulgated by *Nasierowski*, therefore, the Court finds that Plaintiff need not comply with the *Williamson* finality or exhaustion requirement to assert these claims.[19, 20] Accordingly, the Court

_____

[19]The Court notes that the Sixth Circuit has issued many inconsistent opinions on the issue of whether a plaintiff's procedural and/or substantive due process claims are subject to *Williamson County* finality and exhaustion requirements. *See Bigelow v. Michigan Dept. of Nat. Resources*, 970 F.2d 154, 159 (6th Cir. 1992) (noting that due process claims are immediately cognizable in federal court without a need for exhaustion but holding that when substantive and procedural due process claims arise from a taking the finality requirements must be met before those claims could be asserted) (citing *Hoehne v. San Benito County*, 870 F.2d 529, 532 (9th Cir. 1989)); *see also, Harris v. City of Akron*, 20 F.3d 1395, 1402-03 (6th Cir. 1994) (ignoring the holding in *Bigelow* requiring finality as to due process claims because the case was not presented as a "taking case," but as a "pure due process case," since the relevant takings claims were already dismissed on finality grounds; *Triomphe Investors v. City of Northwood*, 49 F.3d 198,

201, n.2 (6th Cir. 1993) (following *Nasierowski*, despite its opinion that the substantive due process claim at issue was "no different from an ordinary takings claim"); *Bannum, Inc. v. City of Louisville*, 958 F.2d 1354, 1362-63 (6th Cir. 1992) (due to the holding in *Nasierowski*, the city ordinance prohibiting community treatment centers like plaintiff's, violated due process although the plaintiff had not exhausted his takings claims). Despite the aforementioned inconsistencies, however, the *Nasierowski* holding remains binding on this Court until either the Supreme Court issues an inconsistent opinion or the Circuit Court sitting *en banc* elects to reconsider the matter. *See Plonski*, 1997 WL 33147776, at *5 (citing *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992) and *Salmi v. Sec. of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)).

[20]In *Choate's Air Conditioning & Heating v. Light, Gas & Water Division of the City of Memphis*, 16 Fed. Appx. 323, 331 (6th Cir. 2001), plaintiff, a property owner, sued defendant, a municipal entity alleging that defendant had violated plaintiff's substantive due process rights by violating an easement-agreement by leasing a portion of the easement to various telecommunications companies. The *Choate's* court dismissed plaintiff's substantive due process claim for failing to state a claim on which relief can be granted. *Id.* at 330. The court subsequently dismissed plaintiff's remaining claims as unripe under *Williamson County*, noting that they were nothing but "repackaged takings claim[s]." *Id.* at 330-31. ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims. . . Indeed, the Fifth Amendment's Just Compensation Clause governs the precise claim set forth by Choate's.").

In *Vashi v. Charter Twp. of W. Bloomfield*, 159 F. Supp. 2d 608 (E.D. Mich. 2001), plaintiffs, unsuccessful applicants for a site plan and special use permit approval for a child daycare center sued the township and its planning commission members for conspiracy to violate plaintiffs' civil rights, alleged equal protection and substantive due process violations, and gross negligence, contending that they were denied a permit because of their ethnic and religious status. The *Vashi* court found that plaintiffs' due process and equal protection claims were subject to the *Williamson County* finality requirement. *See id.* at 616. The *Vashi* court explained that where plaintiffs were "not challenging the legality of the zoning ordinances, or the legality of the process used by Township to render decisions on land use proposal applications," but, rather, were "claiming that the defendants reached their decision to deny the daycare proposal based on the illegitimate criteria of the plaintiffs' ethnicity and race," plaintiffs' was not akin to an immediately ripe *Nasierowski* challenge to a zoning ordinance. *Id.*

In its Reply Memorandum, Intervenor contends that as in *Choate's* and *Vashi*, Plaintiff has merely attempted to repackage regulatory takings claims as due process claims in an effort to avoid the ripeness requirements of *Williamson County*. Intervenor's Reply at 18. Intervenor asserts that, as in *Vashi*, where plaintiffs asserted that their due process rights were violated based on their race, here, Plaintiff has alleged that its due process rights were violated because of Liberty Township's bias against Wal-Mart customers. Accordingly, Intervenor argues that *Williamson County* finality applies. Though Plaintiff does assert that Defendants' bias is at the

-24-

finds that both counts one and two are ripe for its review.

It is undisputed, however, that Plaintiff's equal protection claim is subject to the *Williamson County* final decision requirement.  *See Seguin,* 968 F.2d at 588; *V. Jacobs & Sons v. Saginaw County Dept. of Public Health*, 284 F. Supp. 2d 711, 718 (E.D. Mich. 2003) (plaintiff required to "exhaust" state remedies for its "as applied" equal protection claim); *Bigelow*, 970 F.2d at 159 (finding that the *Williamson* finality requirement applies to both equal protection and takings claims).  Thus, in this case, a ripe equal protection claim arising from the denial of Plaintiff's requested zoning permit must involve a final decision by the government agency or government agent responsible for applying Liberty Township's zoning regulations to Plaintiff's zoning permit application.

Plaintiff has satisfied the finality requirement.  As noted above, finality "is concerned with whether the initial decision-maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury."  *See Bowers*, 325 F.3d at 762; *see also*, *Bannum*, 958 F.2d at 1365.  In the present case, Plaintiff made a meaningful application for a zoning certificate to the Zoning Inspector, and her decision to deny Plaintiff its requested permit constitutes a final decision.[21]

---

heart of its zoning decisions, Plaintiff *also* claims that in an effort to keep Plaintiff from building its sought-after design, Defendants failed to comply with proper Liberty Township procedure in denying Plaintiff's permit applications.  For instance, Plaintiff claims that if, as Defendants claim, the January 19 Instructions are truly a legislative document, they were not passed pursuant to Ohio law or the procedures set forth in the Liberty Township Zoning Resolution.  Such claims distinguish this case from both *Choate's* and *Vashi*; thus, the Court finds *Nasierowski* applicable.

[21]Although Defendants argue that the Zoning Inspector's decision cannot be considered final until state proceedings are complete, courts within Ohio have long held that appeal under Chapter 2506 of the Ohio Revised Code is a "judicial review of a final administrative decision" as opposed to an administrative remedy.  *See Wise v. Milan Twp.*, 2003 WL 21105080 (N.D.

The second prong of *Williamson County*, requiring a plaintiff to seek compensation from the state, does not apply to this case. Courts have held that, "*bona fide* equal protection claims arising from land-use decisions can be made independently from a takings claim and without being subject to *Williamson* [*County* exhaustion]." *See Cramer v. Vitale*, 359 F. Supp. 2d 621, 629 (E.D. Mich. 2005) (citing *Forseth v. Vill. of Sussex*, 199 F.3d 363, 370 (7th Cir. 2000) (holding that, "[a]bsent a fundamental right or a suspect class, to demonstrate a viable equal protection claim in the land-use context, the plaintiff must demonstrate 'governmental action wholly impossible to relate to legitimate governmental objectives.") (citations omitted)). Accordingly, Plaintiff's equal protection claim is ripe for its review.

## 2. Mootness

As noted *supra*, the jurisdiction of federal courts is limited to the resolution of actual "cases" and "controversies." *See See* U.S. CONST. art. III, § 2, cl. 1; *Raines v. Byrd*, 521 U.S. 811, 818 (1997); *NRA of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). A case becomes moot "when the issues presented are no longer live or parties lack a legally cognizable interest in the outcome." *See Cleveland Branch, NAACP v. City of Parma, Ohio*, 263 F.3d 513, 530 (6th Cir. 2001) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). The mootness doctrine posits that cases, which, due to changed circumstances, can no longer impact the interests of the litigants, may not be adjudicated in the federal courts. *See DeFunis v. Odegaard*, 416 U.S. 312 (1974) (plaintiff's case challenging the constitutionality of a state law school's

---

Ohio May 12, 2003); *Karches v. City of Cincinnati*, 526 N.E.2d 1350 (Ohio 1988); *Alexander v. City of Oakwood*, 1993 WL 1318608 (S.D. Ohio Jan. 27, 1993) ("Defendants point to a remedy, an appeal to common pleas court under [O.R.C.] § 2506.01, that is judicial. This remedy is judicial, not administrative, and, thus, cannot support a motion for summary judgment on a claim for failure to exhaust administrative remedies.").

admissions process was found moot; plaintiff was nearing completion of his final year in law

school when the case reached the United States Supreme Court for review, and the Court found

that its decision would no longer affect his interests).[22]

Defendants and Intervenor argue that Plaintiff's claims are moot because Plaintiff "is no

longer entitled to the development it seeks in this litigation."  *See* Intervenor's Motion at 16.

According to Defendants and Intervenor, because Plaintiff failed to develop lot number 2069

within three years from the initial approval of the PUD Plan and failed to apply for and receive

approval from the Commission to extend the applicability of the WCC Development Standards,

the PUD Plan upon which Plaintiff's claims rely, expired in 1994.   Alternatively, Defendants

and Intervenor contend that Plaintiff's claims are moot due to the passage of the December 8,

2004 amendments to the Liberty Township Zoning Resolution.   *See* Ex. L, § 14.04(23).

Plaintiff counters that according to the WCC Development Standards, construction in the WCC

was projected to take approximately ten to twelve years, Plaintiff filed a plat map as required by

the Zoning Resolution, and Defendants have not set forth facts establishing that the PUD Plan

and the corresponding WCC Development Standards are no longer applicable.  Further, Plaintiff

argues that Defendants cannot foreclose its claims by applying the most recent amendments to

the Liberty Township Zoning Resolution retroactively.

### i. Whether the PUD Plan has Expired

Defendants and Intervenor assert that according to the Liberty Township Zoning

---

[22]The Supreme Court has repeatedly described mootness as, "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."  *See, e.g., Friends of the Earth, Inc. v. Laidlaw Environmental Servs.*, 528 U.S. 167, 212 (2000); *United States Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980).

Resolution, because Plaintiff both failed to develop and failed to file a plat map for lot number 2069 within three years of the filing of the PUD Plan and the WCC Development Standards, Liberty Township's preliminary approval of Plaintiff's Planned Commercial ("PC") zoning of lot 2069 has expired.  Plaintiff counters that the PUD Plan has *not* expired because under the Liberty Township Zoning Resolution, the only regulations governing development within the WCC were the WCC Development Standards, which, rather than expiring in three years, projected completion of the WCC within ten to twelve years, occurring "as market conditions dictate."  *See* Ex. F ¶¶ 7-8.  Moreover, assuming arguendo that the Court finds the three-year expiration period applicable to Plaintiff's proposed development, Plaintiff asserts that it properly recorded all plats, and notes that until this litigation began, Defendants permitted many other developers to proceed with construction according to the ten to twelve year timeline set forth in the WCC Development Standards.

Pursuant to the PUD Plan, lot 2069 was zoned "Planned Commercial"[23] ("PC").  In a Liberty Township PC zone, the developer gets to "craft its own unique zoning that applies only to that developer's parcel."  *See* Zoning Resolution §§ 14.01, 14.06(a)-(c) (eff. May 1, 1991).[24]

---

[23]"Planned Commercial" zones are also referred to as "Planned Commercial and Office" zones.  *See* Intrevenor's Motion at 8 (citing Foust Aff, at Tab G, "Oct. 2, 1991 Meeting Minutes").

[24]Section 14.01, "Planned Commercial and Office District – Purpose," provides:

> The Township, recognizing that with increased urbanization and population growth comes increased demands for well organized commercial areas to provide employment, goods and services to area residents as well as to provide a balanced economy within the township, hereby provides for the Planned Commercial and Office District, *intending hereby to promote the variety and flexibility of land development for commercial purposes that are necessary to meet these demands while still preserving and enhancing the health, safety and general welfare of the inhabitants of the Township.*

To allow for this "unique zoning," each developer's PC plan becomes part of an amendment to the Liberty Township Zoning Resolution.  *See* Zoning Resolution §§ 14.06(d) ("The Development Plan as approved by the Township Trustees shall constitute *an amendment to the zoning resolution as it applies to the lands included in the approved amendment*.").  Further, the Township's approval, "shall be for a period of (3) years to allow the preparation of plats required by the Subdivision of Delaware County, Ohio," and "[u]nless the required plats are properly recorded and work on said development commenced within three (3) years, the approval shall be voided and the land shall automatically revert to R-1 District unless the application for time extension is timely submitted and approved."  *Id.*  Finally, where the proposed timetable for a specific PC development includes developing the land in phases, "all phases to be developed after the first, shall be fully described in textural [sic] form in a manner calculated to give township officials definitive guidelines for approval of future phases."  *Id.* § 14.06(b)(8).

As a threshold matter, the Court finds persuasive Plaintiff's argument that because the PUD Plan amended Liberty Township's Zoning Resolution for all WCC property, the WCC Development Standards did *not* expire in 1994.  As set forth above, the Liberty Township Zoning Resolution states clearly that PUD zoning plans become amendments to the Liberty Township Zoning Resolution in order to allow each developer to proceed with construction according to his specific needs.  *See* Liberty Township Zoning Resolution §§ 14.01, 14.06(a)-(c). The WCC Development Standards clearly propose a ten to twelve year construction time, and note that development would proceed as "market conditions dictate."  Ex. F ¶ 7.  Under the Liberty Township Zoning Resolution, these revised timelines for construction within the

---

*See* Zoning Resolution § 14.01.

boundaries of the WCC became amendments to the Liberty Township Zoning Resolution applicable to all WCC developers, and the fact that Plaintiff did not apply for a construction permit within three years does not mean that the PUD Plan expired.

In finding that the three-year expiration period does not apply to Plaintiff's property, this Court relies, in part, on *Solove v. Westerville City Council*, 2002 WL 1291797 (Ohio App. June 13, 2002).  In *Solove*, developers appealed the city council's decision to disapprove an ordinance that would implement a planned community commercial ("PCC") plan.  *Id*. at *1.  In 1987 developers submitted a comprehensive plan to build within a local PCC district for the commission's approval.  *Id*. at *8.  On appeal, plaintiffs argued that the defendants' consideration of the ordinance should have been governed by the PCC development plan rather than by the general provisions of the zoning code.  *Id*. at *9.  Defendants countered that the designation of the property as a PCC district was a "hollow shell" because there were no accompanying standards under which construction must occur.  *Id*.  The *Solove* court ruled for plaintiffs, concluding that the idea contemplated by Ohio law is that "once a Development Plan is approved, such plan will contain the standards applicable to that individual PCC district and to no other property that may also be zoned PCC."  *Id*. at *15.   Therefore, as in *Solove*, in this case, the Court determines that the standards applicable to the WCC are those implemented in 1991/1992.  2002 WL 12917987.

Further, the Court notes that based on the record before it at this time, there is a paucity of evidence to support Defendants' and Intervenor's argument that Plaintiff failed to file a plat map within three years.  There are multiple plat maps attached to the WCC Development Standards, which were indisputably filed with the Commission.  *See* Ex. F.  Thus, though

Defendants suggest that Plaintiff failed to file the necessary plat, the available evidence disputes that claim.[25]

## ii. Retroactive Application of Amended Zoning Resolution

On December 8, 2004, the Commission passed an amendment to the Liberty Township Zoning Resolution, which provides that, "[r]etail or mixed-use buildings, containing retail uses, shall contain no more than 65,000 gross square feet of floor area under one roof." *See* Ex. L, § 14.04(23). Defendants and Intervenor contend that because Wedgewood's zoning permit application sought to build a 220,598 square foot retail store, its proposal did not comply with that 65,000 square foot limit, and was, therefore, correctly denied. Plaintiff, however, asserts that because it applied for a zoning permit in June 2004, six months before the enactment of the 65,000 square foot cap amendment, Defendants' attempts to apply that amendment retroactively must fail.

Property rights "are created and their dimensions defined by existing rules or understanding that stem from an independent source such as state law." *Stile v. Copley Twp., Ohio*, 115 F. Supp. 2d 854, 865, n.21 (N.D. Ohio 2000) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)) (commission's decision to eliminate one category of permitted uses for

---

[25]Intervenor relies on *Wallingford v. Liberty Twp.*, 2001 Ohio App. LEXIS 2411 (Ohio App. May 21, 2001) to assert that the PUD Plan expired in 1994. In *Wallingford*, the appellate court affirmed the trial court's decision dismissing the constitutional claims filed by plaintiffs when the Liberty Township Zoning Commission rejected their applications for permits to build on their property, which is in a Planned Residential District ("PRD") . *Id*. at *1. *Wallingford* is inapposite to the case sub judice. In *Wallingford*, it was undisputed that plaintiffs, landowners of property within a PRD, had failed to begin construction, file a plat map, or apply for an extension of their PRD development plan within the three-year time period set forth in the Liberty Township Zoning Resolution. *See id*. at *5-6. In this case, however, the record contains no substantive evidence to support Defendants' and Intervenor's assertion that Plaintiff failed to file a plat map within three years.

-31-

plaintiff's property amounted to an unauthorized zoning amendment which could *not* be applied

to plaintiff's permit application retroactively).  In Ohio, it is well-established that a property

owner's right to an existing zoning classification vests upon the submission of an application for

a building or zoning certificate.  *Gibson v. Oberlin,* 167 N.E.2d 651 (Ohio 1993) (finding that

the issuance of a permit was governed by the law in effect *at the time of the application therefor*

and not by an amendment to such law enacted during the pendency of litigation to compel the

issuance thereof); *see also Stile,* 115 F. Supp. 2d at 865, n.21 (citing *Gibson* and finding that

plaintiff had a vested right in the township's pre-amendment zoning procedures).  It is

undisputed that Plaintiff applied to the Commission for building permits on June 29, 2004.[26]  The

Amendments to the Liberty Township Zoning Resolution on which Defendants and Intervenor

rely, however, were not enacted until December 8, 2004.  Accordingly, under Ohio law,

Defendants and Intervenor cannot apply retroactively the 2004 Amendments limiting retail space

within the WCC to 65,000 square feet.

### 3. Whether Plaintiff has Standing to Assert its Vagueness Claim

The case or controversy limitation of Article III requires that a party invoking federal

jurisdiction has standing – in other words, a "personal stake in the outcome" of the action.  *See*

---

[26]Intervenor relies on *Smith v. Juillerat*, 119 N.E.2d 611 (Ohio 1954), to argue that
Plaintiff had no vested property interest in Liberty Township's pre-Amendment zoning.  The
*Juillerat* case concerned a defendant who did not promptly use his property for a nonconforming
use after he had been licensed to do so, thereby failing to perfect that nonconforming use.  *Id.* at
612 ("where no substantial nonconforming use is made of property, even though such use is
contemplated and money is expended in preliminary work to that end, a property owner acquires
no vested right to such use and is deprived of non by the operation of a valid zoning ordinance
denying the right to proceed with his intended use of the property.").  The Court finds *Juillerat*
distinguishable because Plaintiff does not seek to use its property for a nonconforming use.  It is
undisputed that under the PUD Plan, subarea 3 was zoned PC, making permissible Plaintiff's
intended use of that property for a commercial business venture.

*Baker v. Carr*, 369 U.S. 186, 294 (1962); *Stevenson v. J.C. Bradford & Co.*, 277 F.3d 838, 852-53 (6th Cir. 2002).  To establish a personal stake in the outcome of an action, a plaintiff must allege an "injury in fact" to his pre-existing, legally protected interest.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted).  That injury must be "(a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Id.*; *see also, TCG Detroit v. City of Dearborn*, 206 F.3d 618, 622 (6th Cir. 2000).  A particularized injury is one that "affect[s] the plaintiff in a personal and individual way."  *Lujan*, 504 U.S. at 560, n.1.  Further, in cases in which a prisoner alleges he has been denied access to court, an inmate establishes standing by showing that he suffered an actual litigation related injury or legal prejudice because of the actions of the defendant.  *See Lewis v. Casey*, 518 U.S. 343, 349-51 (1996) (requiring "actual prejudice with respect to the contemplated or existing litigation, such as the inability to meet a filing deadline or present a claim").

In addition, "standing does not have to be maintained throughout all stages of the litigation."  *Cleveland Branch, NAACP*, 263 F.3d at 524.  "Instead, [standing] is to be determined as of the time the complaint is filed."  *Id.*  The *Cleveland Branch* court exhaustively reviewed United States Supreme Court precedent to conclude that "'jurisdiction is tested by the facts as they existed when the action [was] brought' and 'that after vesting, it cannot be ousted by subsequent events.'"  *Id.* (quoting *Smith v. Sperling*, 354 U.S. 91, 93, n.1 (1957)).  Consequently, the proper inquiry is whether a plaintiff was suffering or had suffered an actual injury *at the time a complaint was filed*.  *Id.* (emphasis added).

Count three of Plaintiff's Complaint alleges that the purported floating cap on commercial development set forth in the January 19 Instructions is unconstitutionally vague.

Accordingly, Plaintiff claims that because Defendants based the floating cap on their interpretation of the Liberty Township Zoning Resolution and the WCC Development Standards, the Resolution and the Standards are also unconstitutionally vague.  Defendants assert that Plaintiff lacks standing to assert its vagueness claim because it failed to seek zoning permit approval through the two-step review procedure instituted through the January 19 Instructions. *See* Defs.' Motion at 17.  According to Defendants, because the Commission, the BZA, and the Trustees have not been given a chance to consider whether the purported floating cap precludes Wedgewood LP from developing the property as it wishes, its vagueness challenge is premature. *Id*. at 18.

The Court finds that Plaintiff has standing to challenge the Liberty Township Zoning Resolution and the WCC Development Standards to the extent that they include the floating cap on commercial development.  The denial of Plaintiff's zoning permit application is an "actual injury," which, according to the Zoning Inspector's September 20, 2004 letter, was based in part on the January 19 Instructions.[27]  *See Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 835 (6th Cir. 2004) (plaintiffs had standing to challenge the zoning scheme's ban on adult bookstores in B-3 zones; because they were injured in fact when they were forced to close their business, a causal relationship existed between the enforcement of the zoning scheme and the harm, and the injury was redressable by an award of monetary damages for lost business); *Stephenson v. Davenport Community School Dist*., 110 F.3d 1303, 1308 (8th Cir.1997) (student's standing to bring a void-for-vagueness claim derived from actual injury, directly caused by school district's

_____

[27]*See supra* notes 13 and 14 (setting forth the Zoning Inspector's reasons for denying Plaintiff's zoning permit application).

-34-

regulation that could be compensated by favorable decision by the court) (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472 (1982)). Moreover, because the Liberty Township BZA issued a January 11, 2005 decision affirming the Zoning Inspector's decision denying Plaintiff its requested zoning permit, Defendants' April 2005 argument that Liberty Township had not been given the opportunity to consider whether Plaintiff's proposed Wal-Mart store would be permissible under the floating cap, is disingenuous.

### 4. Abstention

In its Reply Memorandum, Intervenor raised, for the first time, its contention that should the Court decline to dismiss Plaintiff's case under *Williamson County*, it should at least stay Plaintiff's claims pursuant to the recent decision by the Supreme Court in *San Remo Hotel, L.P. v. City & County of San Francisco, California. See* 125 S.Ct. at 2491. A brief discussion of *San Remo* is necessary. In *San Remo*, plaintiffs, hotel owners, challenged a city hotel ordinance, which imposed a large fee on the conversion of residential rooms to tourist rooms, claiming that it amounted to a regulatory "taking without just compensation." *Id.* at 2495-500. Initially, the plaintiffs challenged the new ordinance in a state inverse condemnation proceeding, but later filed a separate action in the federal district court in California under 42 U.S.C. § 1983. *See id.* The trial judge granted summary judgment for the city. *Id.* On appeal, however, the U.S. Court of Appeals for the Ninth Circuit granted *Pullman* abstention.[28] *Id.* The court explained that on

---

[28]Under the *Pullman* absention doctrine, where,

   . . . federal jurisdiction has been properly invoked and the constitutionality of a state

its face, the ordinance worked a "taking," and the as-applied challenge was unripe because under *Williamson County*, the plaintiffs were required to seek compensation in the state courts before filing suit in federal court.  *Id*.; *see San Remo Hotel v. City & County of San Francisco*, 145 F.3d 1095 (9th Cir. 2004) (citing *Williamson County*, 473 U.S. at 172).

The plaintiffs subsequently pursued their inverse condemnation proceeding in the California state court and moved to reserve their federal claims for resolution in federal court. *San Remo*, 125 S. Ct. at 2499.  The California Supreme Court sustained the San Francisco ordinance against a full range of takings challenges and affirmed the trial court's order, dismissing the complaint.  *Id*.; *San Remo Hotel v. City & County of San Francisco*, 41 P.2d 87 (Cal. 2004).  The plaintiffs did not seek certiorari on the Ninth Circuit's ruling, choosing, instead, to file an amended complaint in the California district court, asserting that they had expressly reserved their federal takings claims.  125 S.Ct. at 2499.  The district court held that the plaintiffs' facial attack on the San Francisco ordinance was barred by both the statute of limitations and the general rule of issue preclusion, and the Ninth Circuit Court of Appeals affirmed.  *Id*. at 2499-500.

---

statute or administrative order challenged, the federal court may, and in the exercise of a sound discretion normally should, stay the action in the federal forum if the construction of pertinent but unclear state law by the state courts may obviate the necessity for a decision of the federal constitutional question or substantially modify the constitutional issue.

*See Tyler v. Collins*, 709 F.2d 1106, 1108 (6th Cir. 1983) (referencing 1A Moore's Federal Practice ¶ 0.203[1] (1982) (citing *Railroad Comm'n. of Texas v. Pullman Co.*, 312 U.S. 496 (1941)).

The Supreme Court granted certiorari[29] and affirmed, holding that under the detailed circumstances of the case, which included "[b]road takings claims in language that sounded in the rules and standards established and refined by [the U.S. Supreme Court's] takings jurisprudence," that the federal court may not disregard the full faith and credit statute, 28 U.S.C. § 1738, in the proceeding. *Id*. at 2500. The Court held that the plaintiffs were precluded by the state judgment from proceeding on identical claims in the federal courts, explaining that, "[t]here is, in short, no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather have not been engaged at all." *Id*. at 2504 (citing *Allen v. McCurry*, 449 U.S. 90, 94-96 (1980)).

Intervenor asserts that based on the Supreme Court's ruling in *San Remo*, this Court should abstain until Plaintiff's parallel state court proceedings are complete. Intervenor's Reply at 9. According to Intervenor, Plaintiff's federal constitutional claims will likely be moot upon a

---

[29]Before *San Remo*, the Ninth Circuit and the Second Circuit were split on the issue of whether parties "who litigate state-law takings claims in state court involuntarily" pursuant to *Williamson County* can be precluded from having those very claims resolved by a federal court. *See Santini v. Connecticut Hazardous Waste Mgmt.*, 342 F.3d 118, 130 (2d Cir. 2003) (noting that plaintiffs have a right to vindicate their federal claims in a federal forum); *but see*, *San Remo Hotel*, 145 F.3d at 1095. The Court limited its review to the Circuit Court split, explaining:

> As this case is presented to us, under our limited grant of certiorari, we have only one narrow question to decide: whether we should create an exception to the full faith and credit statute, and the ancient rule on which it is based, in order to provide a federal forum for litigants who seek to advance federal takings claims that are not ripe until the entry of a final state judgment denying just compensation. *See Williamson County*, 473 U.S. at 172.

*San Remo*, 125 S.Ct. at 2501.

state court judgment that: (1) Plaintiff was required to submit an application for a major

modification; (2) Plaintiff was not entitled to its requested zoning certificate; or (3) the PUD

Plan and the WCC Development Standards included a floating cap on commercial development.

Plaintiff did not have the opportunity to respond to Intervenor's argument.

     The Court finds abstention unnecessary in this case. *Griffin v. School Bd. of Prince*

*Edward County*, 377 U.S. 218, 228-29 (1964). In *Griffin*, African-American school children

sued the County School Board of Prince Edward County, Virginia and others to enjoin them

from refusing to operate an efficient system of free public schools in Prince Edward County and

to enjoin payment of public funds to help support private schools which excluded students on

account of race. *See id*. Defendants asserted that the Supreme Court should abstain from

deciding plaintiffs' claims until the Virginia Supreme Court had had the opportunity to decide

whether the conduct complained of violated the United States Constitution and/or the laws of

Virginia. *Id*. The Court, however, chose to consider the merits of plaintiffs' claims, explaining:

> . . . [T]his is not a case for abstention. In the first place, the Supreme Court of Appeals of
> Virginia has already passed upon the state law with respect to all the issues here. *County
> School Board of Prince Edward County v. Griffin*, 204 Va. 650, 133 S.E.2d 565 (1963).
> But quite independently of this, we hold that the issues here imperatively call for decision
> now. The case has been delayed since 1951 by resistance at the state and county level, by
> legislation, and by lawsuits. The original plaintiffs have doubtless all passed high school
> age. There has been entirely too much deliberation and not enough speed in enforcing the
> constitutional rights which we held in *Brown v. Board of Education*, *supra*, had been
> denied Prince Edward County Negro children. We accordingly reverse the Court of
> Appeals' judgment remanding the case to the District Court for abstention, and we
> proceed to the merits.

*Id*.

     Similarly, in this case Plaintiff's constitutional claims have been unresolved for too long

for this Court to abstain from deciding the pending Motions. Plaintiff's federal action was filed

in November 2004.  Plaintiff's state action was filed in early 2005.  It is now October 2006, and

there has still been no definitive ruling on any of the factual disputes necessary to decide

Plaintiff's claims.  In fact, on September 22, 2005, the state court judge, finding the record

devoid of "vital information" necessary to the court's analysis, remanded the case to the Liberty

Township BZA, and an appeal to the state appellate court is currently pending.  *See Wedgewood*

*Ltd. P'ship I*, Case No. 05CV-F-02-101, Decision and Entry at 3.  Though Plaintiff's claims may

not be as politically weighty as the plaintiffs' claims in *Griffin*, justice delayed is still justice

denied.  Should this Court decline to rule on Plaintiff's claims at this time, it would only further

postpone any possible outcome to the parties' dispute, a result that this Court finds unacceptable.

Accordingly, the Court proceeds to the merits Plaintiff's claims.[30]

---

[30]Defendants also assert that the Court should abstain from asserting jurisdiction over
Plaintiff's claims pursuant to *Younger v. Harris*, 401 U.S. 37 (1971).  The *Younger* doctrine
states that "in light of [the Supreme Court's] concern with principles of comity and federalisn[,]"
"in cases seeking to enjoin ongoing state criminal proceedings, federal courts should not exercise
jurisdiction, but instead, should dismiss the cases in their entirety."  *See Watts v. Burkhart*, 854
F.2d 839 (6th Cir. 1988) (citing *Younger*, 401 U.S. at 37).  The Sixth Circuit has rejected similar
claims in the past.  *Millington Homes Investors, Itd. v. City of Millington, Tennessee*, 1995 WL
394143, at *4 (6th Cir. July 3, 1995).  In *Millington*, plaintiff sued defendants in federal court
asserting that defendants had deprived it of property without due process of law.  *Id*. at *1.
Though defendants argued that the court should abstain from hearing the case because plaintiff
had filed a similar action in Tennessee state court, the *Millington* court found defendants'
contention to be without merit.  *See id*. at *4.  The court explained:

> *Younger* and its progeny have been applied to cases in which a federal court is asked to
> enjoin state court proceedings."  In this case, plaintiff does not seek to enjoin ongoing
> state court proceedings; rather, plaintiff filed the same claims in federal and state court.
> The Supreme Court has noted that "federal courts and state courts often find themselves
> exercising concurrent jurisdiction over the same subject matter, and when that happens, a
> federal court generally need neither abstain (i.e., dismiss the case before it) nor defer to
> the state to the state proceedings (i.e., withhold action until the state proceedings have
> concluded)."  *Growe v. Emison*, 113 S. Ct. 1075, 1080 (1993).  Furthermore, "[f]ederal
> courts have an interest in the orderly functioning of the federal judicial system and in the
> preservation and exercise of their jurisdiction."  *Polykoff v. Collins*, 816 F.2d 1326, 1333

-39-

### B. Whether Plaintiff Has Stated Claims On Which Relief May be Granted

Plaintiff alleges that Defendants deprived it of its civil rights in violation of 42

U.S.C. § 1983.  *See* Complaint ¶¶ 29-56.  Specifically, Plaintiff maintains that Defendants, while

acting under color of state law, deprived it of its right to procedural and substantive due process,

as well as its right to equal protection.  *Id.*  Consequently, Plaintiff contends that it is entitled to

its requested relief.  *Id.* at 19.

Section 1983[31] creates a cause of action for deprivation of civil rights.  *Jaco v. Bloechle*,

739 F.2d 239, 241 (6th Cir. 1984).  For purposes of Section 1983 claims, the term "person" may

be applied "to bodies politic and corporate."  *Quarles v. City of E. Cleveland*, 1999 WL

1336112, *3 (6th Cir. 1999) (citing *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 688 (1978)).

This Court has previously held that township boards of trustees are "persons" within the meaning

---

(9th Cir. 1987). "[P]rinciples of comity and federalism do not require that a federal court abandon jurisdiction it has properly acquired simply because a similar suit is later filed in state court." *Town of Lockport v. Citizens for Community Action at the Local Level, Inc.*, 430 U.S. 259, 264, n.8 (1977).  *See also*, *Ankenbrandt v. Richards*, 112 S. Ct. 2206, 2216 (1992) ("Abstention rarely should be invoked, because the federal courts have a 'virtually unflagging obligation . . .to exercise the jurisdiction given them.'") (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

*See id.*  Thus, despite Defendants' assertions to the contrary, as in *Millington*, the *Younger* doctrine does not require abstention in this case.

[31]The statute provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

of section 1983.  *Danis Clarkco Landfill Co. v. Trustees of German Twp.*, 1997 U.S. Dist.

LEXIS 21081, at *84-85 (S.D. Ohio, Apr. 16, 1997).  Moreover, the Ohio Supreme Court has

held that any "governmental body having powers and duties of government" is a body politic and

corporate.  *See J.D. Partnership v. Berlin Twp. Bd. of Trustees*, 412 F. Supp. 2d 772, 777 (S.D.

Ohio 2005).  Chapter 519 of the Ohio Revised Code makes a township zoning commission

responsible for zoning matters in a township; accordingly, Defendants have powers and duties of

government, and are therefore "persons" within the meaning of Section 1983.  Defendants acted

under color of state law because Defendants' actions related to the Liberty Township Zoning

Resolution.  *See* Ohio Rev. Code §§ 503.01, *et seq.*, 505.01, *et seq.*, 519.01, *et seq.*  Having

decided that Defendants are persons and that they acted under color of law, the Court will now

consider whether Plaintiff's claims satisfy the following elements of a Section 1983 claim: the

deprivation of a right secured by the Constitution or laws of the United States, which was caused

by a person acting under color of state law.  *See Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir.

1995).

### 1. Substantive Due Process Claim

Substantive due process is "[t]he right not to be subject to 'arbitrary or capricious' action

by a state either by legislative or administrative action." *Pearson v. City of Grand Blanc*, 961

F.2d 1211, 1217 (6th Cir. 1992).  Proving a violation of substantive due process requires not

only that the challenged state action was arbitrary and capricious, but also that the plaintiff has a

constitutionally protected property or liberty interest.  *Silver v. Franklin Twp. Bd. of Zoning

Appeals,* 966 F.2d 1031, 1036 (6th Cir.1992).  In the absence of a constitutionally protected

interest, allegedly arbitrary and capricious conduct will not support a substantive due process

-41-

claim.  *See id*.

The Sixth Circuit applies an "entitlement test" to determine whether an alleged property right is protected by the Fourteenth Amendment.  *Andreano v. City of Westlake*, 2005 WL 1506049, *5 (6th Cir. June 23, 2005).  Under that test, a protectable property right exists only if a plaintiff has a "legitimate claim of entitlement" or a "justifiable expectation" in the approval of his Plan.  *Triomphe Investors,* 49 F.3d at 202-03; *Silver,* 966 F.2d at 1036; *G.M. Eng'rs & Assocs., Inc. v. W. Bloomfield Twp.,* 922 F.2d 328, 331 (6th Cir.1990) (finding that if defendants had the discretion to deny plaintiff's zoning application regardless of whether Plaintiff complied with certain minimum, mandatory requirements, then plaintiff has no "legitimate claim of entitlement" or "justifiable expectation" in the approval of its applications).  This Court must apply state zoning laws to determine whether a legitimate claim of entitlement or a justifiable expectation exists. *See Silver,* 966 F.2d at 1036 (citing *Roth,* 408 U.S. at 577).

A plaintiff lacks a legitimate claim of entitlement or justifiable expectation if a municipality has discretion under its zoning code to deny the plaintiff's land-use application despite the application's compliance with the code's minimum requirements.  *Triomphe,* 49 F.3d at 202-03; *Silver,* 966 F.2d at 1036 ("if the Board had discretion to deny the plaintiff the conditional zoning certificate [for the use the plaintiff sought], even if he complied with certain minimum mandatory requirements, then he did not have a 'legitimate claim of entitlement' or a 'justifiable expectation' in the approval of his plan.").  In *Silver,* this Court held that a municipal zoning board retained sufficient discretion to deny a conditional use permit application that fully complied with a zoning statute's minimum requirements where the statute provided that an application could be approved so long as it was "desirable." 966 F.2d at 1036.  Similarly, a

statute providing that "a special use permit may be granted" afforded the zoning board in

*Triomphe* sufficient discretion to deny a special use permit application despite the application's

compliance with the statute. *See* F.3d at 203.

Plaintiff asserts a protected property right in the applied for zoning certificate, as well as

the PUD Plan and the corresponding WCC Development Standards. Applying the above

"entitlement test," however, the Court finds that Plaintiff has set forth no evidence showing that

it has a protected property interest in either.[32] The Liberty Township Zoning Resolution grants

the Commission broad discretion to determine whether to grant or deny applications for zoning

permits. *See* Liberty Township Zoning Resolution § 25.03 (2002).[33] Nothing in the Zoning

Resolution states that an applicant is automatically entitled to a requested zoning permit.

Further, though Plaintiff asserts that Defendants unlawfully applied the January 19 Instructions'

---

[32]The Court notes that Defendants have cited cases holding that a plaintiff's substantive due process claim is subsumed by its Fifth Amendment takings claim. *See Banks v. City of Whitehall,* 344 F.3d 550 (6th Cir. 2003); *Montgomery v. Carter City, Tennessee,* 225 F.3d 758 (6th Cir. 2000). The Court finds the aforementioned cases distinguishable, however, because Plaintiff has not alleged a taking. *See, e.g., Pearson,* 961 F.2d at 1217 (considering plaintiff's substantive due process challenge to defendant's zoning where no taking was alleged); *Tri-Corp. Mgmt. Co. v. Praznik,* 33 Fed. Appx. 742, 747 (6th Cir.2002) (same).

[33]Section 25.03, "Procedure for Obtaining Zoning Certificate," provides, in relevant part:

No Zoning Certificate shall be issued by the Township Zoning Inspector until the Zoning Certificate Application shows that the property is being or is to be used in complete conformity with this Zoning Resolution and the official Zoning Map. . . No Zoning Certificate shall be issued by the Township Zoning Inspector until the Applicant for said Zoning Certificate has submitted a Plot Plan of the area upon which the Applicant's use or structure is proposed. Said Plot Plan shall show the type or proposed use, structural dimensions at the ground, lot dimensions, side, front and rear yard setbacks, compliance with all applicable development standards and a signed statement that said Applicant will conform with all Zoning Regulations then in force for said area.

*See* Liberty Township Zoning Resolution § 25.03 (2002).

-43-

floating cap to deny its zoning permit application, the Zoning Inspector based her denial on a

number of reasons, many of which were unrelated to the January 19 Instructions.  *See* Ex. B.[34]

_____

[34]In addition to the Zoning Inspector's finding the requested certificate of appropriateness
did not comply with the floating cap set forth in the January 19 Instructions, the Zoning
Inspector based her denial of Plaintiff's permit application on the following:

a. The [WCC] Development Plan requires the rear setback for this subarea (Subarea 3) to
be the 100' wide power easement.  This easement is not identified on the site plan . . . so
it is not possible to determine compliance with this requirement.

b. Section 25.03 of the Zoning Resolution requires that the site plan show structural
dimensions at the ground.  No structural dimensions are provided on the site plan which
has been submitted.

c. Section 21.17 of the Zoning Resolution regulates fences.  There is an 8' high screen
wall shown on the plans, 55 feet from the west property line . . . This does not comply
with Section 21.17 of the Resolution, but does meet the requirements of 14.07 A
(requires that all uses within this zoning district be enclosed within a structure or
screened from view by fences and/or landscaping).

d. The southeast area of the site plan . . . is blank.  The development plan requires that all
yards be landscaped.  In order to be complete, the site plan needs to show the proposed
use and improvements in this area.

e. Section 21.12 of the Zoning Resolution regulates driveway construction.  Paragraph
(A)(8) of Section 21.12 requires a minimum curve radius of all driveways of 50 feet.  We
cannot determine from the submission which has been made whether or not this
requirement is met.  The plans lack this required information.

f. Section 21.12(C)(1) of the Resolution requires a minimum aggregate paving base in all
driveway areas of 10 inches.  Page 4 of 11 of the submitted plan shows an 8" aggregate
base.  This is not compliant.

g. Section 21.12(2) of the Resolution states the maximum driveway grade at any point
over its entire length, is 10%.  Driveway grades are provided only at the entrances from
public roads (page 4 of 11).  No information is provided for driveway grades within the
rest of the site.

h. Section 21.05(A)(1) of the Resolution requires fully-shielded cut-off style light
fixtures.  The light fixtures shown on Pg. 10 of 11 of the plan do not comply

-44-

Because Plaintiff has not established a legitimate claim of entitlement to a zoning permit, nor a justifiable expectation that the Zoning Inspector would issue the permit, it has no property interest that could support a substantive due process claim.

The Court notes that even if Plaintiff *did* have a protected property interest in its requested zoning permit, it has failed to show that the Zoning Inspector's denial of its permit application was "arbitrary and capricious."  *See Tri-Corp. Mgmt. Co.,* 33 Fed. Appx. at 747; *Pearson,* 961 F.2d at 1217; *see also Nectow v. City of Cambridge,* 277 U.S. 183, 187-88 (1928) (holding that a court should not interfere with local zoning decisions unless the locality's action "has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense") (internal quotation marks and citation omitted).  The Zoning Inspector denied Plaintiff's permit applications because Plaintiff failed to comply with a number of elements of the Liberty Township Zoning Resolution beyond the floating cap, and the record does *not* suggest that the denial was unwarranted.  Accordingly, Defendants' and Intervenor's Motions to Dismiss count one of Plaintiff's Complaint is **GRANTED**.[35]

---

      i. The drawings show fountain lights on Pg. L2.02 of the drawings, located in both ponds (pg. L2.04).  No details are provided for the type of light fixtures proposed for use in these locations.  All fixtures must comply with Section 21.05, and that compliance must be shown on the materials submitted to this office.

*See* Ex. B. at 2-3.

     [35]Plaintiff also relies on a number of Sixth Circuit cases to argue that its substantive due process rights were violated because the Zoning Inspector's illegal denial of Plaintiff's permit application amounted to an illegal act that "shocks the conscience."  *See, e.g., Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (addressing the issue of a prisoner's claim of retaliation," the "shocks the conscience" test was the appropriate legal standard for Bell's claim).  The Court finds Plaintiff's assertion to be without merit.  Actions that "shock the conscience" are those that

## 2. Procedural Due Process Claim

The Court now turns to Plaintiff's procedural due process claim.  The Fourteenth

Amendment provides, in part, that "[n]o State shall . . . deprive any person of life, liberty, or

property, without due process of law."  U.S. CONST. amend. XIV, § 1.  Procedural due process

generally requires that the state provide a person with notice and an opportunity to be heard

before depriving that person of a property or liberty interest."  *See, e.g., Thompson v. Ashe*, 250

F.3d 399, 407 (6th Cir. 2001) ("Courts have long recognized that the Fourteenth Amendment

requires that an individual who is deprived of an interest in liberty or property be given notice

and a hearing.").

Only after a plaintiff has met the burden of demonstrating that he possessed a protected

property or liberty interest and was deprived of that interest will the court consider whether the

process provided to the plaintiff in conjunction with the deprivation, or lack thereof, violated his

rights to due process.  *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002);  *LRL Properties v.*

*Portage Metro Hous. Auth.,* 55 F.3d 1097, 1108 (6th Cir.1995) ("[I]n a section 1983 due process

claim for deprivation of a property interest, a plaintiff first must show a protected property

interest, and only after satisfying this first requirement can a plaintiff prevail by showing that "

'such interest was abridged without appropriate process.'"").  Property interests protected by the

due process clause must be more than abstract desires for or attractions to a benefit.  *See Roth,*

government officials may not take "no matter what procedural protections accompany them."
*Wilson v. Beebe,* 770 F.2d 578, 586 (6th Cir. 1985).  While the Sixth Circuit has questioned the
continued vitality of this strand of substantive due process jurisprudence, it nevertheless
recognizes it in the exclusive context of cases involving *physical abuse.  See Braley v. City of
Pontiac,* 906 F.2d 220,  225 (6th Cir. 1990). This is clearly not a physical abuse case to which
the "shocks the conscience" standard applies.

-46-

408 U.S. at 577.  The due process clause protects only those interests to which one has a

"legitimate claim of entitlement." *Id*.  This has been defined to include "'any significant property

interests . . . including statutory entitlements.'"  *Brotherton,* 923 F.2d 477, 480 (6th Cir. 1991)

(citations omitted).  As previously stated, property interests are not created by the Fourteenth

Amendment, rather they are created and defined by independent sources, such as state law.  *See*

*id.* at 480 (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709).  State supreme court decisions are

controlling authority for such determinations. *See id.*; *Hamilton v. Myers*, 281 F.3d 520, 529 (6th

Cir. 2002).

      This Court previously found that Plaintiff does *not* have a bona fide property interest in

the zoning permit it seeks.  *See supra* Part IV.B.1.  Plaintiff asserts, however, that it has an

actionable liberty interest in Defendants' drafting and adoption of the January 19 Instructions.

First, though Defendants assert that the January 19 Instructions constitute a legislative act to

which procedural due process requirements are inapplicable, Plaintiff counters that procedural

due process requirements apply because the January 19 Instructions are administrative.  Second,

while Defendants contend that the January 19 Instructions do not alter zoning within the

boundaries of the WCC because they merely state the original intent of the 1991 WCC PUD

Plan, Plaintiff argues that the Instructions function as an amendment to the PUD Plan, and, by

extension, to the Liberty Township Zoning Resolution.[36]

      The Court must consider whether the January 19 Instructions are legislative or

administrative in nature.  In Ohio, the power of a board of township trustees to enact zoning

regulations is a legislative function delegated to townships by the General Assembly.  *Tuber v.*

---

      [36]*See supra* note 11 (explaining that the January 19 Instructions represented an effort by
the Commission to clarify the details of the WCC Development Standards filed in 1992).

*Perkins*, 216 N.E.2d 877 (Ohio 1966). Defendants assert that because they were enacted by the Commission, the January 19 Instructions constitute a legislative act, to which procedural due process requirements do not apply. Plaintiff argues, however, that the January 19 Instructions are administrative, entitling Plaintiff to notice and an opportunity to contest them before they were issued. *See* Pl.'s Opp. to Defs.' Motion at 26.

In Ohio, the test for determining whether an action is legislative or administrative "is whether the action taken is one enacting a law, ordinance or regulation already in existence." *Donnelly v. Fairview Park*, 233 N.E.2d 500 (Ohio 1968) (refusal of city council to approve plan for re-subdivision of land which complied with terms of existing zoning ordinance was an administrative act rather than an unreviewable legislative act, and there was a statutory right to appeal, from the refusal to approve, to the court of common pleas); *see B-Metallic Investment Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915) (even though an individual's property rights may be affected by legislative action, "[w]here a rule of conduct applies to more than a few people, it is impracticable that everyone should have a voice in its adoption")*; see also*, *Pickney Bros., Inc. v. Robinson*, 1999 WL 801513, at *4 (6th Cir. Sept. 30, 1999) ("Governmental determinations of a general nature that affect all equally do not give rise to a due process right to be heard. But, when a relatively small number of persons are affected on individual grounds, the right to a hearing is triggered."); *Neinast v. Bd. of Trustees of the Columbus Metro. Library*, 346 F.3d 585, 597 (6th Cir. 2003) ("Governmental determinations of a general nature that affect all equally do not give rise to a due process right to be heard.") (internal citations omitted).

Based on the above inquiry, the January 19 Instructions are administrative and subject to

procedural due process requirements.  The Court finds it telling that in issuing the January 19

Instructions, the Commission did not adhere to the detailed amendment procedure set forth in

section 519.12 of the Ohio Revised Code or the procedure set forth in the Liberty Township

Zoning Resolution.[37]  *See* OHIO REV. CODE § 519.12; *see also*, Liberty Township Zoning

Resolution, Art. XXVII (2002).   Defendants cannot assert that the Instructions constitute

legislation, while at the same time, undisputedly failing to adhere to valid state procedure for

enacting such legislation.  Further, although Defendants assert that the January 19 Instructions

are intended to affect *all* future WCC development equally, the Instructions refer directly to

Plaintiff's controversy with Liberty Township.  *See* Ex. K at 1 ("During the past two months, we

---

[37]Section 519.12, "Amendments to zoning resolution; procedure; referendum; form of petition; filing requirements," states, in part:

> (A)(1) Amendments to the zoning resolution may be initiated by motion of the township zoning commission, by the passage of a resolution by the board of township trustees, or by the filing of an application by one or more of the owners or lessees of property within the area proposed to be changed or affected by the proposed amendment with the township zoning commission. The board of township trustees may require that the owner or lessee of property filing an application to amend the zoning resolution pay a fee to defray the cost of advertising, mailing, filing with the county recorder, and other expenses. If the board of township trustees requires such a fee, it shall be required generally, for each application. The board of township trustees, upon the passage of such a resolution, shall certify it to the township zoning commission.

> (2) Upon the adoption of a motion by the township zoning commission, the certification of a resolution by the board of township trustees to the commission, or the filing of an application by property owners or lessees as described in division (A)(1) of this section with the commission, the commission shall set a date for a public hearing, which date shall not be less than twenty nor more than forty days from the date of the certification of such a resolution, the date of adoption of such a motion, or the date of the filing of such an application. Notice of the hearing shall be given by the commission by one publication in one or more newspapers of general circulation in the township at least ten days before the date of the hearing.

OHIO REV. CODE § 519.12.

have faced a significant controversy regarding proposed additional commercial development in the [WCC] development and in Liberty Township, generally."). Accordingly, the Court finds specious, Defendants' argument that the Instructions were merely an effort by the Commission to set forth that which had been intended in the drafting of the 1992 WCC Development Standards, rather than an effort to thwart Plaintiff's planned Wal-Mart.[38] Defendants allowed construction within the WCC to occur for thirteen years before finding it necessary to "clarify" the WCC Development Standards, and the Court finds it noteworthy that they chose to do so only *after* Plaintiff had submitted its first variance application for its proposed Wal-Mart.

Second, the Court must consider Defendants' argument that the January 19 Instructions, rather than amending the WCC Development Standards, merely put into writing that which had been intended by the parties when the WCC Development Standards were filed with the Commission in 1992. Defendants' claims are unpersuasive. The Court previously found that the evidence available at this stage of the litigation suggests that the PUD Plan has *not* expired. *See supra* Part IV.A.2.a. Pursuant to that Plan, subarea 3 was zoned for an approximately 220,000 square foot commercial development. *See* Ex. F. Though, in form, the January 19 Instructions appear to be guidelines on which the Commission is to base its future administration of WCC's zoning and development, in function, the Instructions effectively amend the PUD Plan (and by extension the Liberty Township Zoning Resolution) to eliminate the possibility of any "big-box" retailers from developing within the WCC. After the January 19 Instructions were issued by the Commission, no further commercial development could occur in the WCC without undergoing a two-step major modification process and getting approval from the WCC architectural review

---

[38]*See supra* note 11.

committee, procedural requirements that had not been in place in the thirteen years prior.

Finding that Plaintiff has a liberty interest in the January 19 Instructions, therefore, the Court must next consider whether Defendants' deprivation of Plaintiff's liberty interest contravened notions of due process. A plaintiff can establish a procedural due process claim through one of two methods: "(1) [by] demonstrating that [he] is deprived of property as a result of [an] established state procedure that itself violates due process rights; or (2) by proving that [d]efendants deprived [him] of property pursuant to a 'random and unauthorized act' and that available state remedies would not adequately compensate for the loss." *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991). Established state procedure refers to "the mechanism that effects a deprivation or contributes to cause a deprivation." *See Vinson v. Campbell County Fiscal Court*, 820 F.2d 194, 199 (6th Cir. 1987). "A plaintiff alleging the first element of this test would not need to demonstrate the inadequacy of state remedies." *Moore v. Bd. of Educ. of Johnson City Sch.,* 134 F.3d 781, 785 (6th Cir.1998). If the plaintiff pursues the second line of argument, he must navigate the rule of *Parratt v. Taylor,* 451 U.S. 527, 539 (1981), which holds that a state may satisfy procedural due process with only an adequate post-deprivation procedure when the state action was "random and unauthorized." *See Macene,* 951 F.2d at 706; *see also Zinermon v. Burch,* 494 U.S. 113, 128 (1990) (narrowing *Parratt* to only those situations where pre-deprivation process would have been impossible or impractical). In this context, "unauthorized" means that the official in question did not have the power or authority to effect the deprivation, not that the act was contrary to law. *See id.* at 138.

Plaintiff has a valid procedural due process claim under the first prong of *Macene*.[39]

_____

[39]Plaintiff also asserts a procedural due process claim under the second prong, claiming that because available state procedures do not enable it to collect money damages on its claims,

Defendants' enactment of the January 19 Instructions, in effect, an amendment to the WCC

Development Plans and the Liberty Township Zoning Code, took place without regard to

established amendment procedures set forth by Ohio law, and/or the Liberty Township Zoning

Resolution.  Based on the facts alleged, the January 19 Instructions appear to be Defendants'

attempt to prohibit Plaintiff's requested zoning permit without having to face the potential

problems that could occur if Township residents and developers were given a say in the matter.

For thirteen years, the WCC PUD Plan had set subarea 3 as an approximately 220,000 square

foot commercial lot.  After the January 19 Instructions were issued, however, the size of any

potential commercial development on that lot shrunk far below the originally allotted square

footage.  Defendants cannot unilaterally change the future of the WCC without providing the

public with both notice and an opportunity to debate such a change. Therefore, the Court

**DENIES** Defendants' and Intervenor's Motions to Dismiss count two of Plaitniff's Complaint.

### 3. Void-for-Vagueness Claim

"The 'void-for-vagueness doctrine' is embodied in the due process clauses of the fifth

and fourteenth amendments." *D.C. and M.S. v. City of St. Louis, Mo.,* 795 F.2d 652, 653 (8th

Cir.1986).  A vague regulation is constitutionally infirm in two significant respects.  First, the

doctrine of vagueness "incorporates notions of fair notice or warning," and a regulation "violates

the first essential of due process of law" by failing to provide adequate notice of prohibited

conduct.  *See Smith v. Goguen,* 415 U.S. 566, 572 (1974); *Connally v. General Constr. Co.,* 269

U.S. 385, 391 (1926) (citations omitted); *Belle Maer Harbor v. Charter Twp. of Harrison,* 170

F.3d 553, 556 (6th Cir.1999) ("A statute which either forbids or requires the doing of an act in

it has sufficiently pled inadequate state remedies.  Defendants disagree.  Because the Court finds
merit to Plaintiff's first prong claim, it need not reach the state remedies issue.

terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.").  In short, a regulation is void-for-vagueness if it "forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application. . . ." *Connolly*, 269 U.S. at 391.  Second, the void-for-vagueness doctrine prevents arbitrary and discriminatory enforcement.  *Goguen,* 415 U.S. at 573.  "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application" *Grayned v. City of Rockford,* 408 U.S. 104, 108-09 (1972).

Generally, courts have found that "[v]agueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand." *Nat'l Rifle Ass'n of Am. v.* Magaw, 132 F.3d 272, 292 (6th Cir. 1997) (citing *Maynard v. Cartwright,* 486 U.S. 356, 361 (1988)).  In other words, the statute must be judged on an as-applied basis, and a facial challenge before the statute has been applied is premature.  *United States v. Mazurie,* 419 U.S. 544, 550 (1975); *United States v. Hofstatter,* 8 F.3d 316, 321 (6th Cir.1993).

The Court finds that Plaintiff's vagueness challenge states a claim on which relief may be granted.  Plaintiff makes an "as applied" challenge to Liberty Township's Zoning Resolution and the WCC Development Standards, asserting that insofar as Defendants' applied the floating cap in considering Plaintiff's zoning permit application, the Resolution and the Development Standards "are not written with sufficient definiteness such that ordinary persons can understand what conduct is prohibited or permitted."  *See* Complaint ¶ 46.  Further, the Zoning Inspector cited the January 19 Instructions as one reason for her denial of Plaintiff's permit applications,

making those Instructions, and their incorporation into the Township's zoning laws, a cause of

Plaintiff's injury.  Finally, Plaintiff's injury will likely be addressed by a favorable decision by

the Court in that Plaintiff seeks an order enjoining Defendants from enforcing the purported

floating cap against Plaintiff.  Complaint at 19.[40]  Accordingly, Defendants' Motion to Dismiss

count three of Plaintiff's Complaint is **DENIED**.

### 4. Equal Protection Claim

In count four of the Complaint, Plaintiff alleges that Defendants' conduct violated the

Equal Protection clause of the Fourteenth Amendment, which prohibits a state from denying

equal protection of the laws to any person within its jurisdiction.  *Warren v. City of Athens*, 411

F.3d 697, 708 (6th Cir. 2005); *see Buckles*, 2002 WL 193853.  Defendants urge the Court to

dismiss this claim because Plaintiff has failed to allege that he was a member of a suspect class

---

[40]Plaintiff also notes that according to *Springfield Armory, Inc. v. City of Columbus,* 29
F.3d 250 (6th Cir.1994), it could have attacked the January 19 Instructions on their face.  In
*Springfield Armory*, the Sixth Circuit found that the district court's review of a City of Columbus
ordinance "on an as applied basis" was, in the circumstances of that case, "an erroneous way to
approach the vagueness problem," because the ordinance banning certain assault weapons was
obviously vague on its face.  *Id.* at 254.  In *Springfield Armory, Inc.,* the ordinance defined
"assault weapons" by naming forty-six individual models of rifles, shotguns and pistols, listed by
model name and manufacturer. Added to the prohibition against these weapons was the
following phrase: "other models by the same manufacturer with the same action design that have
slight modifications or enhancements of firearms listed . . . provided the caliber exceeds .22
rimfire." *Id.* at 252. The *Springfield Armory* court found that the term "slight modifications" was
unconstitutionally vague, making the ordinance facially invalid.  *Id.* at 254.  In *Nat'l Rifle Ass'n
of Am. v. Magaw*, 132 F.3d 272 (6th Cir. 1997), however, the Sixth Circuit distinguished
*Springfield Armory*, as a special case.  The *Magaw* court noted that a facial challenge was
appropriate because: (1) the *Springfield Armory* court did not consider justiciability requirements
of Article III; and (2) as the court was reviewing a city ordinance, not a federal statute enacted
by Congress, it did not have to consider whether there had been "final agency action" in regard
to an interpretation of the provision alleged to be vague.  *Id.* at 292.  Because the Court will
consider Plaintiff's "as applied" vagueness challenge, however, it need not consider whether
*Springfield Armory* or *Magaw* is more analogous to the instant case.

and that he was treated differently from other similarly situated individuals.

The standard of review given to an equal protection claim depends on the classification involved.  In the case sub judice, Plaintiff does not claim to be a member of a protected class.  Rather, Plaintiff is proceeding under the "class of one" theory annunciated in *Village of Willowbrook v. Olech*, 528 U.S. 1073, 1074 (2000).  To succeed under a "class of one" theory, Plaintiff must show that it was treated "differently from others similarly situated and that there is no rational basis for such difference in treatment."  *See Warren*, 411 F.3d at 710 (finding that plaintiffs failed to establish that there was no rational basis for defendants' zoning decision); *Buckles*, 2002 WL 193853, at *13.

Plaintiff asserts that it is a "developer of commercial property in the [WCC], and [is] thus similarly situated to the other developers of commercial property in the WCC."  *See* Pl.'s Opp. to Defs.' Motion at 35.  Moreover, Plaintiff argues that it was denied equal protection of the laws because other WCC developers have received the benefit of Liberty Township's "anything goes" zoning for the past thirteen years.  *Id*. at 35-36.  Specifically, Plaintiff contends that in order to discriminate against Plaintiff's proposed Wal-mart store, Defendants enacted the floating cap and required formal review by the WCC architectural review committee for the first time.  Pl.'s Opp. to Intervenor's Motion at 40.  Defendants counter that Plaintiff's conclusory assertions fail to state a claim on which relief can be granted.  The Court agrees.

Plaintiff has failed to allege a valid equal protection claim because it has not provided evidence suggesting that the other allegedly similarly situated developers submitted commercial land use proposals to the Commission that would exceed the purported floating cap, let alone that these other developers were granted approval of such proposals.  *See Buckles*, 2002 WL

193853, at *13 (noting that "[a]n equal protection claim simply cannot exist absent an allegation that *compared to others*, the plaintiff was treated less favorably."). Thus, Defendants' and Intervenor's Motions to Dismiss count four of Plaintiff's Complaint is **GRANTED**.

### 5. State Law Claims

In counts five through eight of the Complaint, Plaintiff asserts substantive due process, procedural due process, vagueness, and equal protection claims pursuant to Ohio law. These claims are governed by essentially the same standards as those applicable to Plaintiff's federal constitutional claims. *See Warren v. City of Athens, Ohio*, 411 F.3d 697, 704, n.6 (6th Cir. 2005) (citing *Sorrell v. Thevenir*, 633 N.E.2d 504, 511-12 (Ohio 1994)). Accordingly, insofar as the Court dismissed Plaintiff's federal law claims, Plaintiff's corresponding state claims are also dismissed. Thus, the Court **GRANTS** Defendants' and Intervenor's Motions as to counts five and eight of Plaintiff's Complaint, and **DENIES** the Motions as to counts six and seven.

### 6. Declaratory Judgment

As noted *supra*, count nine of Plaintiff's Complaint states a claim for declaratory relief. *See* Complaint ¶¶ 89-91. The Court has denied Defendants' and Intervenor's Motions to dismiss counts two, three, six and seven at this time. Until those claims are resolved, however, Plaintiff's claim for declaratory relief remains viable. Accordingly, the Court **DENIES** Defendants' and Intervenor's Motion to Dismiss count nine.

### V. CONCLUSION

For the foregoing reasons, Defendants' and Intervenor's Motions are **GRANTED** in part and **DENIED** in part. The Court **GRANTS** Defendants' and Intervenor's Motions as to counts one, four, five, and eight of Plaintiff's Complaint. The Court **DENIES** Defendants' and

Intervenor's Motions as to counts two, three, six, seven and nine of Plaintiff's Complaint.

Counts one, four, five, and eight of Plaintiff's Complaint are hereby dismissed with prejudice.

**IT IS SO ORDERED.**

                                      **s/Algenon L. Marbley**
                                **ALGENON L. MARBLEY**
                                **UNITED STATES DISTRICT JUDGE**

**DATED: October 12, 2006**