**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **WEDGEWOOD LIMITED** | : | |
| **PARTNERSHIP I,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. C2-04-1069** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **TOWNSHIP OF LIBERTY, OHIO,** *et. al.*, | : | **Magistrate Judge King** |
| | : | |
| **Defendants.** | : | |
| | : | |

<u>**OPINION AND ORDER**</u>

**I. INTRODUCTION**

This matter comes before the Court on cross-motions for summary judgment by Plaintiff

Wedgewood Limited Partnership I ("Wedgewood LP" or "Plaintiff"), and Defendants Holly C.

Foust, Robert E. Cape, Peggy Guzzo, and Curt Sybert (collectively, "Trustees"), the Township

of Liberty, Ohio, located in Delaware County, Ohio ("Liberty Township"), and the Board of

Trustees of Liberty Township ("Board of Trustees") (collectively, "Defendants").  For the

reasons that follow, the Court **GRANTS** summary judgment in favor of Plaintiff on its

procedural due process (Counts II & VI) and vagueness (Count III & VII) claims, and **GRANTS**

in part and **DENIES** in part Plaintiff's request for declaratory relief (Count IX).  Accordingly,

Defendants' motion for summary judgment as to Counts II, III, VI, and VII is **DENIED**, and

Defendants' motion is **GRANTED** in part and **DENIED** in part as to Count IX.

## II. STATEMENT OF FACTS[1]

### A. Background

The parties' dispute centers on the Defendants' decision to deny zoning approval for Plaintiff's proposed plan to develop a Wal-Mart Supercenter within Liberty Township. Defendants assert that they refused to issue Plaintiff a zoning permit to build the proposed Wal-Mart because the store would not comply with Liberty Township's Zoning Resolution. Plaintiff claims, however, that Defendants' decision to deny the requested zoning permit violated its due process rights and that the Zoning Resolution is an unconstitutionally vague ordinance.

### 1. The Parties

Plaintiff owns an approximately 34-acre lot located in the "Wedgewood Commerce Center" development (the "WCC"), a 345-acre mixed-use development within Liberty Township. The lot, which is the subject of the instant suit, was platted as lot number 2069 or "subarea 3" in the WCC Section 1 and recorded as such in the Delaware County records. In addition to owning lot number 2069, Wedgewood LP was also one of the original developers of the WCC. Defendants are Liberty Township, the Board of Trustees, and the individual board members in their capacity as Trustees. Also, the Liberty Township/Powell Neighborhood Community Watch Foundation has intervened as a party defendant in the suit.

### 2. The WCC Development

In June 1991, Plaintiff and others filed an application to amend Zoning Map to Planned Commercial ("PC") to create the WCC, a proposed planned-unit development ("PUD"). On

---

[1]The statement of facts is adopted, in part, from the Court's October 12, 2006 Order, addressing Defendants' motions to dismiss.

November 18, 1991, the Board of Trustees approved the re-zoning and the parties developed a planned-unit development plan (the "PUD Plan"). [2]  The PUD Plan, and all corresponding plat maps were formally combined into the "Wedgewood Commerce Center Development Standards" ("WCC Development Standards"), which was filed with the Commission on February 2, 1992.  Among other things, the WCC Development Standards required the establishment of an "architectural review committee" to "exercise control over the design and final planning of all phases of the development" and to ensure that the proposed structures fit the "rural context of Liberty Township."  Further, the WCC Development Standards provided that development would occur in five-year phases and would "proceed as market conditions dictate," estimating that it would take approximately ten to twelve years to finish the project.

Pursuant to the PUD Plan, there were seventeen subareas created with three different types of designated use: commercial, residential, and office.  Subareas 3, 8, and 9 were the only subareas zoned for commercial use.  Each was allotted a different amount of square feet for commercial use, and when added together, they totaled 499,930 square feet of permitted commercial use within the overall PUD Plan.[3]  According to the Liberty Township Zoning

---

[2]In *Gray v. Trustees of Monclova Twp.*, 313 N.E.2d 366 (Ohio 1974), the Ohio Supreme Court addressed the nature of planned-unit development ("PUD") zoning, explaining that PUD zoning permits those aspects of land development that were normally regulated by zoning to vary within a geographically-defined area by bearing a single zoning classification.  The *Gray* court noted that, "[t]he overall zoning classification in a PUD area can be termed 'nominal' because it does not, by itself, indicate the specific zoning restrictions in the area. These restrictions are ascertainable only by referring to the approved plats for the development." *Id*. at 369.  Accordingly, the *Gray* court found that the approval of a PUD plat is the functional equivalent of "traditional legislative zoning." *Id*.

[3]Subarea 3 was allotted +/- 220,857 square feet; subarea 8 was allotted +/- 144,553 square feet; and subarea 9 was allotted +/- 134,520 square feet.

Resolution, in place at that time, in a Liberty Township PC zone, the developer gets to "craft its own unique zoning that applies only to that developer's parcel."  *See* Zoning Resolution §§ 14.01, 14.06(a)-(c) (eff. May 1, 1991).  To allow for this "unique zoning," each developer's plan becomes part of an amendment to the Township's zoning code.  *See id*. §§ 14.06(d) ("The Development Plan as approved by the Township Trustees shall *constitute an amendment to the zoning resolution as it applies to the lands included in the approved amendment*.") (emphasis added).

Over the course of the next thirteen years, in accordance with standard Liberty Township zoning procedure,[4] significant development occurred within the WCC.  Some of this development differed from what was set forth in the PUD Plan.  For instance, although the PUD Plan designated subareas 4, 5, 6, and 10 for "suburban office use" only, owners of each of these subareas sought approval for and were granted permits to build retail and/or commercial structures.  Accordingly, subareas 4, 5, 6, and 10 now comprise approximately 248,000 square feet of "commercial" development, rather than the suburban office space for which they were initially zoned.  Plaintiff asserts that it had no involvement or input in Liberty Township's approval of these zoning changes.

In October 2003, Plaintiff submitted an application to the Commission for six area variances, to construct a Wal-Mart Supercenter on WCC lot number 2069.  The parties do not dispute that the proposed Wal-Mart store complies with the definition of "commercial" use under the Liberty Township Zoning Resolution.  After conducting a public hearing on the matter,

---

[4]Parties seeking to construct buildings on property within Liberty Township must first apply for a "Zoning Certificate" from the Zoning Inspector, who must then certify that the proposed construction is consistent with Liberty Township's Zoning Resolution.

however, the Commission denied Plaintiff's variance applications, and Plaintiff subsequently withdrew them.

Soon after Plaintiff's variance applications were denied, the Homeowners Associations of Wedgewood, Campden Lakes, Wedgewood Hills, Falcon Ridge, Braemar, the Barringtons at Wedgewood Villa Condominium Association, Big Bear Farms, and Grandshire,[5] detailed their concerns over what they deemed inconsistencies in the PUD Plan. The Board of Trustees then ordered the Zoning Inspector, Holly Foust, to study the history of the administration of the PUD Plan to alleviate a number of concerns over its application.

On January 19, 2004, following the Zoning Inspector's study, the Trustees issued a Public Statement (the "January 19 Instructions"), which now governs the procedural administration of the WCC by the Commission. Importantly, the January 19 Instructions concluded that the PUD Plan imposed a so-called "floating cap" of 500,000 square feet of commercial property (the "floating cap") on all development within the WCC. Accordingly, the Board of Trustees instructed the Zoning Inspector to refrain from issuing any Zoning Certificates for additional commercial development that would surpass the 500,000 square foot floating cap within the WCC, unless or until the PUD Plan had been modified or amended pursuant to procedures for modifications set forth in the Liberty Township Zoning Resolution. The Board of Trustees further indicated that any future applications for commercial development would be subject to a "two-step major deviation" development Plan modification.[6]

---

[5]These groups later formed the Liberty Township/Powell Neighborhood Community Watch Foundation.

[6]The Board of Trustees wrote:

Plaintiff did not submit Zoning Applications under this heightened "major modification" process. Instead, on June 29, 2004, Plaintiff, using standard Liberty Township procedure, applied for zoning permits to build an approximately 220,598 square foot Wal-Mart Supercenter and a Murphy Oil gas station in subarea 3. On September 30, 2004, the Zoning Inspector denied Wedgewood LP's permit applications explaining that, in light of the January 19 Instructions, the applications: (1) failed to meet the requirements for development plans; (2) exceeded the acreage allowed under the floating cap; (3) were incomplete because they had neither been submitted for approval nor approved by the WCC architectural review committee; and (4) were inconsistent with both the Zoning Resolution and the PUD Plan.

On October 20, 2004, Plaintiff appealed the Zoning Inspector's denial to the Liberty Township Board of Zoning Appeals ("BZA"). At the same time, Plaintiff also submitted a revised site plan and a letter withdrawing its permit application for the Murphy Oil gas station. In its appeal, Plaintiff stated that the Zoning Inspector had acted improperly in finding that the proposed construction would exceed the maximum square footage limitations because the January 19 Instructions, which served as the basis for the Inspector's decision, were inaccurate. Further, Plaintiff asserted that the Zoning Inspector had incorrectly stated that she could not

---

the commercial development completed to date, and substantially through the approval process, has consumed most of the commercial footage imposed by the development Plan as an overall cap. . . . Under these circumstances, we have determined that, except for a few modest projects which have already completed the two-step "major" administrative review process, *all additional applicants seeking to construct retail or other arguable "commercial" development in the [WCC] will be required to seek approval as a "major" plan of modification*.

The two-step approval process includes: (1) a review by the Commission or the Liberty Township Board of Zoning Appeals; and (2) a review by the Board of Trustees. *See* Zoning Resolution § 14.06(E) (eff. Oct. 3, 2002).

issue a Zoning Certificate without the architectural review committee's approval as such approval had not been required in the thirteen years since the PUD Plan had been approved. Finally, Plaintiff argued that the Zoning Inspector had mistakenly deemed its applications incomplete for allegedly failing to meet variance requests.

The parties currently dispute multiple details of the PUD Plan.  Defendants contend that prior to the Board of Trustees' final approval of the PUD Plan, the Trustees held a public hearing on November 11, 1991, where it was decided that the WCC would be limited to the density of one million square feet of office space, 500,000 square feet of retail space, and 750 residential units.  Further, Defendants assert that on November 15, 1991, an amendment was made to the PUD Plan that commercial construction could not exceed 500,000 square feet; and that an addendum ("Addendum A") was attached to the official filing of the PUD Plan in February 1992, which also set forth the 500,000 square-foot cap on commercial development.  As support for their contention, Defendants cite to the minutes from the Commission's October 1991 and November 1991 meetings.  Plaintiff counters that the parties never agreed to set a floating cap on commercial development, but rather that the documentation citing 500,000 square feet of commercial development simply offer summations of the commercial use designated for subareas 3, 8, and 9.  Moreover, though Plaintiff concedes that it agreed to the establishment of a WCC architectural review committee, it contends that the committee has never met, and the Commission has never before required the committee's pre-approval of a party's zoning permit application.

## B. Procedural History

Because Plaintiff has filed the instant federal court action in addition to filing a later suit in state court, a discussion of the procedural history of both the federal and state court proceedings is necessary.

### 1. State Court Proceedings

On November 5, 2004, before the BZA had ruled on Plaintiff's appeal, Plaintiff filed the instant suit claiming that Defendants' reliance on the January 19 Instructions, Defendants' modification of the Zoning Resolution, and Defendants' denial of Plaintiff's Wal-Mart zoning permit application violated Plaintiff's constitutional rights. After Plaintiff filed this action, however, administrative activity regarding Plaintiff's denied zoning permit continued in Liberty Township.

On November 16, 2004, the Liberty Township BZA conducted a public hearing on Plaintiff's appeal of the Zoning Inspector's decision. Although Plaintiff did not present any testimonial evidence at the hearing, it did present arguments concerning the content and meaning of its plans, the development of the surrounding parcels, and a history of the WCC. On January 11, 2005, the BZA affirmed the Zoning Inspector's September 30 denial of Plaintiff's permit applications. *See* BZA Findings of Fact and Conclusions of Law. Thereafter, on February 8, 2005, Wedgewood LP filed its Notice of Appeal from the BZA's final decision in state court, pursuant to Ohio Revised Code § 2506.01.

On March 28, 2005, Plaintiff filed a motion to supplement the record with additional evidence and to stay the briefing of the case pending a decision on this motion. Plaintiff contended that the Board of Trustees' directive that they must approve, after public hearing, all

-8-

commercial development in WCC was "improper and illegal." Plaintiff also asserted that the use of subarea 3 to build an approximately 220,000 square-foot Wal-Mart store is not a deviation from the PUD Plan because in 1991, Plaintiff was originally allotted up to 220,857 square feet for commercial development. Further, Plaintiff claimed that it was not bound by the floating cap because no such cap had been set forth in the WCC Development Standards, and because it had never agreed to allot a significant percentage of the purported floating cap to the developers of subareas 4, 5, 6, and 10, who were permitted to construct commercial buildings in place of the office space set forth in the PUD Plan. On or about May 13, 2005, the state court denied Plaintiff's Motion to Supplement the Record, explaining that in failing to address its questions and concerns regarding certain documents and procedures during the BZA hearing, Plaintiff had effectively waived its right to supplement the record in the trial court.

On July 18, 2005, the parties participated in a hearing before the Court of Common Pleas for Delaware County, Ohio, addressing only two narrow issues: (1) the legal basis for the floating cap on commercial development in the WCC development; and (2) whether the PUD Plan had expired by the time Plaintiff had submitted its Wal-Mart zoning permit application. The state court noted that there was a dearth of evidence on both of the issues in question, explaining:

> In this case, vital information is missing from the Liberty Township Board of Zoning Appeals ("BZA") record that was submitted to this Court. Scarce, if any, testimony or exhibits were contained within the record that resolved questions pertaining to the basis of the zoning inspector's decision to deny Wedgewood's application for a zoning certificate. Further, the record was also devoid of evidence as to the legal basis of the 500,000 square-foot commercial limit imposed upon the WCC; and evidence as to the affect of the originally approved [Development P]lan for the WCC on the commercial limit.

*See Wedgewood Ltd. P'ship I v. Liberty Twp. Bd. of Zoning Appeals*, Case No. 05CV-F-02-101, Decision and Entry at 3 (Ohio Ct. Com. Pl.'s Sept. 22, 2005) (Whitney, J.). Accordingly, the state court remanded the matter to the Liberty Township BZA to "carry out its role as the finder of fact to determine the basis of the zoning inspector's decision, as well as provide documentation for the 500,000 square-foot commercial limit [(the floating cap)] on the [WCC] Development and the affect of the original [PUD] Plan." *Id*. Plaintiff appealed the Court of Common Pleas' remand order to the Ohio Fifth District Court of Appeals, which held that it lacked subject matter jurisdiction to consider Plaintiff's appeal because the remand did not constitute a final appealable order. Meanwhile, the record currently before this Court reflects that the BZA deliberations are still being conducted.

## 2. Federal Court Proceedings

On November 5, 2004, Plaintiff filed this action in this Court asserting its constitutional rights had been violated. Plaintiff's federal court Complaint asserts nine Counts against Defendants. On October 12, 2006, this Court granted in part and denied in part Defendants' Rule 12(b)(6) motion to dismiss all Counts. The Court refused to dismiss Counts Two, Three, and Nine. Specifically, the Court determined that Plaintiff's procedural due process and void for vagueness claims, under both the federal and Ohio constitutions, stated claims upon which relief could be granted. The Court also denied Defendants' motion to dismiss Plaintiff's declaratory relief claim, withholding judgment pending the resolution of Plaintiff's viable constitutional claims.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant has the burden of proving the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In determining whether the movant has carried its burden, the Court views the evidence in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The standard of review for cross-motions of summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation.  *Taft Broad. Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir. 1991).  And "[t]he fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts.  Rather, the court must evaluate each party's motion on its own merits. . . ." *Id.* (citations omitted).

### IV.  LAW AND ARGUMENT

#### A.  Due Process

##### 1.  Plaintiff's Liberty Interests

A Plaintiff can make a procedural due process claim through one of two methods: "(1) [by] demonstrating that [he] is deprived of property as a result of [an] established state procedure

that itself violates due process rights; or (2) by proving that [d]efendants deprived [him] of property pursuant to a 'random and unauthorized act' and that available state remedies would not adequately compensate for the loss."  *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991). An established state procedure refers to "the mechanism that effects a deprivation or contributes to cause a deprivation."  *See Vinson v. Campbell County Fiscal Court*, 820 F.2d 194, 199 (6th Cir. 1987).  Under the first-prong of *Macene*, a plaintiff is not required to demonstrate the inadequacy of state remedies.  *Moore v. Bd. of Educ. of Johnson City Sch.,* 134 F.3d 781, 785 (6th Cir.1998).

In its October 12, 2006 Order, this Court found that the January 19 Instructions are administrative in nature, as opposed to legislative, and are therefore subject to procedural due process requirements.  *Wedgewwod Ltd. P'ship I. v. Twp. of Liberty, Ohio*, 456 F. Supp. 2d 904, 935 (S.D. Ohio 2006); *see also*, *Pickney Bros., Inc. v. Robinson*, No. 98-5097, 1999 WL 801513, at *4 (6th Cir. Sept. 30, 1999) ("Governmental determinations of a general nature that affect all equally do not give rise to a due process right to be heard.  But, when a relatively small number of persons are affected on individual grounds, the right to a hearing is triggered.").  This Court then went on to find that Plaintiff has a valid liberty interest in the PUD Plan,[7] and a legitimate procedural due process claim under the first prong of the *Macene* test.  *Id.* at 936.[8]  The question presently before the Court is whether, under a summary judgment standard of review, the

---

[7]Defendants spent considerable effort arguing against the validity of Plaintiff's liberty interest in the PUD Plan, but ignored the fact that this Court already ruled on the issue as a matter of law.  There is no basis for the Court's legal ruling on the 12(b)(6) motion to be relitigated upon the filing of motions for summary judgment.

[8]Because the Court found merit in Plaintiff's claim of a procedural due process under the first-prong of *Macene*, it did not reach Plaintiff's second-prong claim.

January 19 Instructions constitute an established state procedure that deprive the Plaintiff of its liberty interests, and if so, whether that deprivation contravened notions of due process.  Both parties agree that interpreting the PUD Plan's meaning is a matter of law.  *See State v. Wood*, 137 Ohio App. 3d 623, 625 (2000).[9]

Plaintiff argues that the January 19 Instructions are an established state procedure that deprive it of  its liberty interests in the PUD Plan because the Instructions modify the terms of the Plan.  Specifically, Plaintiff argues that the January 19 Instructions instituted a previously non-existent floating cap on commercial development that covers the entire PUD Plan, whereas the original PUD Plan only considered commercial development in three subareas and accordingly the commercial development limitations were only applicable to those areas.  Also, Plaintiff argues that the January 19 Instructions introduced the requirement that *all* subsequent commercial development in the WCC must go through the two-step major modification process, whereas the original PUD Plan only required the two-step process for projects that would constitute a "major deviation" from the Plan.

In support, Plaintiff relies on *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 896 (6th Cir. 1991) to argue that when the government amends a zoning plan in a way that is going to target a small number of persons on individual grounds, due process rights to notice and a hearing are implicated.  The court in *Nasierowski* held that a landowner's due process rights were violated when his land was re-zoned without prior notice or a hearing concerning the type of re-zoning that took place.  *Id.*  Plaintiff argues that their case is analogous

---

[9]Because there is no federal law of zoning, federal courts rely on state court interpretations for guidance.  *See, e.g.*, *League to Save Lake Tahoe v. Crystal Enterprises*, 685 F.2d 1142, 1144 (9th Cir. 1982).

because the January 19 Instructions effectively amended the PUD Plan without regard to established procedures set forth by Ohio law and the Liberty Township Zoning Code,[10] and without notice or hearing.

Defendants retort that the 500,000 square-foot floating cap and the major modification procedure both existed before the creation of the January 19 Instructions. Concerning the 500,000 square-foot floating cap, Defendants cite to Addendum A and the November 15, 1991 amendments to the PUD Plan. Defendants note that these documents articulate the 500,000 square-foot limitation, using descriptions like "Total Land Use [for commercial development]" and "[g]ross square footage of commercial construction shall not exceed Five Hundred Thousand (500,000) square feet." Defendants argue that if these descriptions were intended to be mere summations of subareas 3, 8, and 9, they would have explicitly stated as much. Further, with respect to the major modification procedure, Defendants argue that it was incorporated in to Section 14.06(E) of the Liberty Township Zoning Resolution in 1996 and had been applied to multiple developers prior to the creation of the January 19 Instructions. Thus, Defendants assert that this case is distinguishable from *Nasierowski* because the January 19 Instructions were only instructions on how to interpret the PUD Plan, not an amendment to the Plan as was the case in *Nasierowski*.

---

[10]Ohio Rev. Code Ann. § 519.12 governs amendments to township zoning regulations and requires that before amendments can take effect there must be a public hearing before the zoning commission and the board of trustees, among other procedural requirements.

Article XXVII of the Liberty Township Zoning Resolution contains many of the procedural requirements found in Ohio Rev. Code Ann. § 519.12

-14-

Defendants also contend that Plaintiff is quasi-estopped from arguing that commercial development in subareas not originally designated for commercial development does not count toward the 500,000 square-foot floating cap because Plaintiff knew of that development and did not object.  Defendants argue that the doctrine of quasi-estoppel prevents Plaintiff from accepting "the benefits of legislation [here, the PUD Plan] and then challeng[ing] the burdens which the legislation imposes." *Fairland v. Fraley*, No. 9827, 1981 Ohio App. LEXIS 13742, at *8 (9th Dist. Feb. 11, 1981).  Here, the allegation is that Plaintiff knew of the 500,000 square-foot limitation, developed commercial businesses in areas not originally designated as commercial, and now wants to exceed the 500,000 square-foot limitation by relying on the PUD Plan's originally conceived commercial allowance for subarea 3.

The Court finds, as a matter of law, that the January 19 Instructions amended the PUD Plan.  Addressing the 500,000 square-foot floating cap first, the Court has two possible interpretations of the PUD Plan: (1) the 500,000 square-foot limitation discussed in the November 15 amendments and Addendum A was meant to work in conjunction with the individual allowances for commercial development in subareas 3, 8, and 9 (which coincidentally happened to total approximately 500,000 square feet); or (2) the discussion of 500,000 square feet in the PUD Plan is solely a summation of the allowable commercial development in the three subareas approved for commercial use.

Ohio law requires deference toward the property owner when interpreting zoning plans. *B.P. Oil Co. v. Dayton Bd. Of Zoning Appeals*, 672 N.E.2d 256, 261 (Ohio App. 2 Dist., 1996) ("Ohio law is clear that in interpreting a zoning ordinance courts must strictly construe restrictions on the use of real property in favor of the property owner.).  No such deference is

needed here. Defendants' interpretation of the PUD Plan simply makes less sense than that of

Plaintiff.  If the 500,000 square feet of commercial development described in the November 15

amendments and Addendum A was meant to be independent from the limitations described in

each individual subarea, it would render the commercial designations of subareas 3, 8, and 9

meaningless.  There would be no point in having a commercial development limitation that

applied to all seventeen subareas if commercial development was only intended to be permissible

in three of those subareas.   Instead, Plaintiff's interpretation of the PUD Plan is much more

reasonable.  The PUD Plan's description that commercial development "shall not exceed"

500,000 square feet is consistent with the limitations placed on subareas 3, 8, and 9, which total

approximately 500,000 square feet.  Thus, reading it as a summation of the maximum allowable

commercial development in those three subareas is most logical.  The fact that *both* parties were

willing to turn a blind-eye toward the location requirements for commercial development

expressed in the PUD Plan for thirteen years does not somehow change the maximum allowable

commercial development in subareas 3, 8, or 9.  Nowhere in the PUD Plan is any such "floating

cap" condition mentioned.[11]

The January 19 Instructions also made the two-step major modification procedure

applicable to *all* future commercial development, not just to commercial development that

constituted a major deviation from the PUD Plan.  Whether Plaintiff's proposed development

would have been subject to the procedure is irrelevant.  The fact that the requirements of the

---

[11]Because the Court finds no existence of a floating cap on commercial development, the doctrine of quasi-estoppel is inapplicable.  Plaintiff does not seek to avoid the responsibilities of legislation from which it receives benefit, therefore, it cannot be estopped from something that it is not doing.

PUD Plan were amended by the January 19 Instructions is sufficient to implicate Plaintiff's liberty interests.

This Court has already held, as a matter of law, that Plaintiff has a liberty interest in the procedures set forth under the PUD Plan, and the Court now finds that Defendants' January 19 Instructions represent an amendment to that Plan.  The January 19 Instructions, therefore, constitute an established state procedure for due process analysis under *Macene* because they are the mechanism that effect the deprivation of Plaintiff's liberty interests.  *See Vinson*, 820 F.2d at 199.

### 2.  Provision of Due Process

As noted above, in *Nasierowski*, the Sixth Circuit held that where a landowner's liberty interests will be deprived by the passage of an amendment to a zoning ordinance, notice and an opportunity to be heard are constitutionally required.  *Nasierowski Bros. Inv. Co.*, 949 F.2d at 896.  The plaintiff in *Nasierowski* was not provided that opportunity to be heard, and thus the court ruled that he had been deprived of due process.  Consistent with its holding in *Nasierowski*, the court in *Macene* held that the plaintiff was not deprived of due process because he had ample notice and opportunity to be heard under the procedures set forth by Michigan law.  *Macene*, 951 F.2d at 706.

Here, Plaintiff was not given notice or an opportunity to be heard concerning the amendments to the PUD Plan that took effect with the creation of the January 19 Instructions, nor were the procedures set forth in the Liberty Township Zoning Regulation or section 519.12 of the Ohio Revised Code followed.  In its Order denying Defendants' Rule 12(b)(6) motion to dismiss Plaintiff's procedural due process claim, the Court held:

-17-

> For thirteen years, the WCC PUD Plan had set subarea 3 as an approximately 220,000 square-foot commercial lot.  After the January 19 Instructions were issued, however, the size of any potential development on that lot shrunk far below the originally allotted square footage.  Defendants cannot unilaterally change the future of the WCC without providing the public with both notice and an opportunity to debate such a change.

*Wedgewood Ltd. Partnership I v. Township of Liberty, Ohio, et. al.*, 456 F. Supp. 2d 904, 937 (S.D. Ohio 2006).  The Court now finds that there are no genuine issues of material fact on this claim, and rules as a matter of law that Plaintiff was denied due process as guaranteed by the Fourteenth Amendment to the United States Constitution.  Plaintiff's motion is hereby **GRANTED**, and Defendants' motion is **DENIED**.

### B.  Void-for-Vagueness Claim

"The 'void-for-vagueness doctrine' is embodied in the due process clauses of the fifth and fourteenth amendments."  *D.C. and M.S. v. City of St. Louis, Mo.,* 795 F.2d 652, 653 (8th Cir. 1986).  A vague regulation is constitutionally infirm in two significant respects.  First, the doctrine of vagueness "incorporates notions of fair notice or warning," and a regulation "violates the first essential of due process of law" by failing to provide adequate notice of prohibited conduct.  *See Smith v. Goguen,* 415 U.S. 566, 572 (1974); *Connally v. General Constr. Co.,* 269 U.S. 385, 391 (1926) (citations omitted).  In short, a regulation is void-for-vagueness if it "forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application. . . ."  *Id.*  Second, the void for vagueness doctrine prevents arbitrary and discriminatory enforcement.  *Goguen,* 415 U.S. at 573.  "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application"  *Grayned v. City of Rockford,* 408 U.S. 104, 108-09 (1972).

Generally, courts have found that "[v]agueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand." *Nat'l Rifle Ass'n of Am. v.* Magaw, 132 F.3d 272, 292 (6th Cir. 1997) (citing *Maynard v. Cartwright,* 486 U.S. 356, 361 (1988)). In other words, the statute must be judged on an as-applied basis, and a facial challenge before the statute has been applied is premature. *United States v. Mazurie,* 419 U.S. 544, 550 (1975); *United States v. Hofstatter,* 8 F.3d 316, 321 (6th Cir.1993).

Plaintiff brings an as-applied challenge, arguing that if the January 19 Instructions solely clarify the PUD Plan's requirements, and do not represent an amendment to the PUD Plan, then the PUD Plan is unconstitutionally vague. Plaintiff rests its claim on the assertion that the PUD Plan provides no notice of the obligations and restrictions that are spelled out by the January 19 Instructions.

Defendants focus their argument on the notion that it is reasonable to conclude that the 500,000 square-foot limitation and the two-step major modification were a part of the PUD Plan and Liberty Township Zoning Regulation before the creation of the January 19 Instructions. Defendants rely on the Supreme Court's instructions regarding statutory interpretation as set forth in *INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001): "if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is fairly possible, we are obligated to construe the statute to avoid such problems." Defendants also assert that for Plaintiff to succeed on its vagueness claim, it "must prove that the enactment is vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 495 n.7

-19-

(1982) (internal citations omitted).  Defendants argue that Plaintiff falls well short of demonstrating that it is impossible to interpret the PUD Plan as containing the requirements that were allegedly clarified in the January 19 Instructions.

The Court finds that the PUD Plan is unconstitutionally vague as applied to Plaintiff. Defendants' analysis of the vagueness doctrine is flawed insofar as it attempts to demonstrate the facial validity of the PUD Plan.  Plaintiff has brought an as-applied challenge, which does not require analysis of whether the PUD Plan could have any possible valid interpretations.  *See Mazurie,* 419 U.S. at 550.  Instead, Plaintiff's claim requires the Court to determine whether Defendants' actual application of the PUD Plan put Plaintiff on adequate notice of prohibited conduct.  *See Goguen,* 415 U.S. at 572.  Thus, the *St. Cyr* and *Hoffman* cases cited by Defendants are inapposite.  Both of those cases address facial validity of legislation, not challenges to the application of legislation. As discussed in *supra* section IV(A)(1), there is nothing in the PUD Plan that would put Plaintiff on notice that commercial development outside of subareas 3, 8, and 9 would cause a corresponding decrease in the commercial development permitted within those three subareas—nor did Defendants' actions during the thirteen years following the passage of the PUD Plan give Plaintiff such notice.  Further, there is nothing in the Liberty Township Zoning Regulation that would give a person of common intelligence notice that a two-step major procedure for *major deviations* from the PUD Plan would actually be applicable for *any* commercial development application, even those that did not propose a major deviation.  Thus, the fact that the January 19 Instructions introduced these requirements and were relied upon by the Zoning Inspector for her denial of Plaintiff's application demonstrate that the

PUD Plan is unconstitutionally vague as applied to Plaintiff, and as a result, Plaintiff suffered injury. The Court, therefore, **GRANTS** Plaintiff's motion and **DENIES** that of Defendants.

### C. State Law Claims

In Counts Six and Seven of the Complaint, Plaintiff asserts due process and vagueness claims pursuant to Ohio law. These claims are governed by essentially the same standards as those applicable to Plaintiff's federal constitutional claims. *See Warren v. City of Athens, Ohio*, 411 F.3d 697, 704 n.6 (6th Cir. 2005) (citing *Sorrell v. Thevenir*, 633 N.E.2d 504, 511-12 (Ohio 1994)). Accordingly, insofar as the Court **GRANTS** Plaintiff's federal law claims, Plaintiff's corresponding state law claims are also **GRANTED**.

### D. Declaratory Relief

Although heavily briefed by the parties, Plaintiff's request for declaratory judgment stating that Plaintiff is entitled to the zoning permit it seeks has already been dismissed. *See Wedgewood Ltd. P'ship I*, 456 F. Supp.2d at 933 (holding that "[b]ecause Plaintiff has not established a legitimate claim of entitlement to a zoning permit, nor a justifiable expectation that the Zoning Inspector would issue the permit, it has no property interest that could support a substantive due process claim. . . . The Zoning Inspector denied Plaintiff's permit applications because Plaintiff failed to comply with a number of elements of the Liberty Township Zoning Resolution beyond the floating cap, and the record does *not* suggest that the denial was unwarranted."). Thus, Plaintiff's request for declaratory relief regarding the sufficiency of its zoning applications and entitlement to a zoning permit is **DENIED**.

However, in this Order, the Court has granted Plaintiff's procedural due process and vagueness claims with respect to the incorporation of the January 19 Instructions in to the PUD

Plan.  Accordingly, the Court **GRANTS** Plaintiff's request to enjoin the enforcement of the

January 19 Instructions.  In particular, it is ordered that Liberty Township may not impose a

500,000 square-foot "floating cap" over the WCC PUD Plan.[12]

### V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** summary judgment in favor of Plaintiff

on its procedural due process (Counts II & VI) and vagueness (Count III & VII) claims, and

**GRANTS** in part and **DENIES** in part Plaintiff's request for declaratory relief (Count IX).

Accordingly, Defendants' motion for summary judgment as to Counts II, III, VI, and VII is

**DENIED**, and Defendants' motion is **GRANTED** in part and **DENIED** in part as to Count IX.

**IT IS SO ORDERED.**


     **s/Algenon L. Marbley**
     **ALGENON L. MARBLEY**
     **UNITED STATES DISTRICT JUDGE**


**DATED: September 26, 2008**

---

[12]Defendants also assert that Plaintiff's request for declaratory relief has been rendered moot by virtue of a newspaper article reporting that Wal-Mart terminated its real estate purchase agreement to buy WCC Lot 2069 from Plaintiff.  *See* Wal-Mart Supercenter Now In Limbo; Retailer Halts Deal to Buy Liberty Township Site; *Columbus Dispatch*, p. B1 (Mar. 6, 2008). This argument lacks merit, however, because it is the Plaintiff who applied for the zoning permit, the Plaintiff who owns property in the PUD Plan, and the Plaintiff who has brought suit.  The status of any contractual obligations between Wal-Mart and the Plaintiff is irrelevant to the issues before this Court.